THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LLOYD LOCKWOOD, Defendant-Appellant.

First District (4th Division)   No. 1—90—3522

Opinion filed December 10, 1992.—Rehearing denied February 3, 1993.

Rita A. Fry, Public Defender, of Chicago (Cheryl K. Lipton and Evelyn G. Baniewicz, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McMORROW* delivered the opinion of the court:

Following a jury trial, defendant was convicted of aggravated arson and sentenced to 12 years' imprisonment. On appeal, he contends that the State failed to prove him guilty beyond a reasonable doubt; that he was prevented from eliciting evidence supporting his theory of defense; that the trial court committed reversible error in refusing to instruct the jury on lesser offenses; and that the aggravated arson statute is unconstitutional.

The evidence adduced at trial is as follows. Gloria Snow testified that she lived in the first-floor apartment of a building on North Harding Avenue in Chicago with her two daughters, Robresta and Aurelius; and that her granddaughter was visiting on the night of January 12, 1990. Shortly after 10 p.m., defendant, who had been dating Robresta, came to the apartment and told her that he wanted to retrieve some clothes he had left there and to speak with Robresta. Gloria informed him that Robresta was not at home, but allowed him entrance and walked back to Robresta's room with him. After gathering his clothes, defendant told Gloria that he was going to wait there for Robresta. Gloria responded that he could not stay and noted that he smelled of beer. He assured her that he was "fine," but she repeated that she wanted him to leave. As defendant was leaving, Ro-

---

*Justice McMorrow participated in the disposition of this case prior to her becoming a member of the supreme court of Illinois.

bresta arrived. They went into Robresta's room to talk, but within a short time they began fighting. When Gloria went to the room, she saw defendant "hitting [Robresta], shoving her around." After a struggle, Gloria came between him and Robresta and finally pressured defendant to leave. She then locked both the outer door to the building and the apartment door.

When the doorbell rang, Gloria looked out her living room windows, from which the street and outer door to the vestibule of the building are visible, and saw defendant at the front door "laying" on the bell. Gloria knocked on the window and told him to stop ringing the bell and to leave. Defendant responded that he was going to stay there all night if necessary. While continuing to ring the bell, he said that if she did not allow Robresta to come out and talk to him, "I'm gonna take all of you out. I will get you out," and then he left. Approximately 30 minutes later, defendant returned and began ringing the bell again. He told Gloria to send Robresta out, but Gloria refused. Defendant then went to his car and took out a brown bag. He came to the front of the house and began shaking liquid on the sidewalk in front of the door and under the front windows. He also shook some liquid into the vestibule through the mail slot. He then gathered some leaves and paper and put them in a pile near the corner of the door, removed a lighter from the glovebox of his car, walked back to the house and set the papers and leaves on fire. Gloria saw flames from the pile of debris and smelled strong gasoline fumes. She hollered to Robresta to call the police. Defendant went to his car and started it, but a police car drove up, preventing him from leaving. One of the officers ran to the house and stomped out the fire.

At the time of these events, Katie Buckhalter, the owner of the building, and her daughter, Kimberly, were in their second-floor apartment. After the police arrived, Gloria and the Buckhalters went down the stairs to the vestibule. The hallway and the rug were flooded with gasoline and the door and floor were "black and burnt [sic]." Gloria and Katie brought down cleaning supplies and mopped up the gasoline and scrubbed the floor and door. Gloria identified photographs of the front of the house, the outside of the front door and the floor just inside the front door which were taken by a police photographer a few hours after the incident.

On cross-examination, Gloria stated that Robresta went down to the vestibule with a pot of water which she splashed on the fire in the hallway as the police officer was stomping on the fire outside. When she opened the door, the fire in the hallway "poofed up." The fire department was never called. After the police had interviewed everyone

in the building, they left. Gloria believed at that time that "everything was over" and did not learn until later that they should not have cleaned the hallway. The linoleum in the hallway was not replaced after the incident. Gloria acknowledged that she did not approve of defendant because he hit Robresta. In speaking to the police, she told them that defendant had been "clowning" with Robresta when he was in the apartment.

Kimberly Buckhalter, aged 22, testified that she was awakened in the early morning hours by her mother screaming that there was a fire. When they ran downstairs she smelled gas fumes and saw that the door was burned. The only thing she saw in the hallway was gas on the floor and that the tile was blackened. After the police left, she helped clean up the floor and scrub the door. She did not recall whether the police told them not to touch anything on the scene. The testimony of Katie Buckhalter, Kimberly's mother, was essentially the same as Kimberly's. She added that a portion of a rug in the hallway had also been burned.

Robresta McSwain testified that upon arriving home shortly after 11 p.m. on January 12, her mother informed her that defendant was there and wanted to talk to her. She went into her room and told defendant to leave because her mother did not want any arguing or fighting. He told her that he wanted to talk, but she said they had nothing to talk about, whereupon they began physically fighting. Her mother came in and stood between them, and ordered defendant to leave. At first he refused, but eventually he left the apartment. He went downstairs and began ringing the doorbell, and then stopped. A short time later, he returned and "laid on the doorbell again" and began arguing with her mother who was talking to him through the window. Shortly before 2 a.m., she heard her mother talking to defendant again. She smelled gasoline and then went to the window and saw defendant reach into the glove compartment of his car. She realized that he had removed a lighter when he flicked it. At that point, she called the police. Following her call, her mother told her that defendant had set the building on fire. By the time she returned to the window, defendant was trying to leave in his car. The police arrived and blocked his departure.

When Robresta opened the apartment door, the fire in the hallway "went up," and she almost fell into it because the hallway was filled with gasoline. She ran back into the apartment and filled a pan with water to pour on the fire. She also ran upstairs to alert the Buckhalters that there was a fire. After the police left, they cleaned up the gasoline and scrubbed the door. She did not awaken her youn-

ger sister or niece, nor did anyone leave the building because of the fire.

Officer Kostecki testified that he and his partner arrived at the scene within minutes of receiving a radio call. Another police car had also just arrived from the opposite direction. When he saw that the front door of the building was on fire, he quickly exited his vehicle, went up to the door and stomped and beat out the fire. He was met in the vestibule area by a young woman carrying a pot. She accompanied Kostecki to where the officers from the other police car had stopped defendant's vehicle and identified defendant as the man who set the fire. After defendant was placed under arrest, Kostecki returned to the building. He recovered a rug, which was saturated and smelled of gasoline, from the vestibule. Before leaving, he advised the residents that someone would be back later to take photographs of the damage. On cross-examination, Kostecki stated he did not see any fire on the inside of the building. There was liquid on the floor but he did not know if it was gasoline or water.

Officer John Cruz testified that when he and his partner arrived at the scene a car was pulling away from the curb. They blocked the car and detained defendant. The front door of the building seemed to be on fire, and a uniformed officer was stomping out the fire. After Robresta identified defendant as the offender, defendant was placed under arrest and searched. They recovered an Amoco $3 gasoline purchase receipt, on which some numbers and the name "Carolyn" were written, from defendant's pocket and a yellow Bic lighter from the car seat. They also found a one-gallon antifreeze container, which smelled of gasoline, next to the house.

On cross-examination, Cruz stated that Robresta and Gloria reported that there had been a heated verbal altercation with defendant in the apartment, but neither woman stated that there had been a physical fight. Robresta advised him that she had poured water in the vestibule, but that fact was not included in the police report.

Carolyn Griffin testified that defendant drove in to the Amoco station where she worked shortly after midnight on the date of the offense. He asked to purchase $3 of gasoline. She did not see him pump the gasoline. He then returned to the window and asked if she had a light for his cigarette. She gave him a yellow Bic lighter and told him to keep it. They had a conversation which lasted between 30 and 45 minutes. A short time later, a police officer drove into the station in defendant's car and questioned her.

William Tyrrell, employed as a technician with the police department crime laboratory, testified that tests established that a soil sam-

ple and the antifreeze container recovered from the scene contained gasoline. He also tested the hallway rug and found the presence of gasoline. On cross-examination, Tyrrell stated that he did not conduct tests to determine the amount of gasoline in or on any of the items. Following Tyrrell's testimony, the State rested.

Aurelius Snow, Robresta's 14-year-old sister, testified that on the night at issue, she was awakened by noisy commotion and yelling. When she came out of her bedroom, she smelled gasoline but did not see any fire. She did not leave the apartment.

Defendant first contends that his conviction for aggravated arson was improper because the State failed to prove an essential element of the offense. Specifically, with reliance on *People v. Oliff* (1935), 361 Ill. 237, 197 N.E.2d 777, and *People v. Carter* (1990), 200 Ill. App. 3d 760, 558 N.E.2d 489, defendant asserts that the State was required to prove that the building was burned. He argues that the evidence established only that a fire was started on the ground outside of the front door and that it was stomped out by a police officer before any burning damage occurred.

In *Oliff* the defendant argued that the charred and scorched condition of the ceiling, walls and floor of a building was not sufficient to constitute a burning necessary to prove arson. The supreme court held that for there to be a burning there must be a wasting of the fibers of the wood, no matter how small in extent. The *Oliff* court further stated that the charring of a wall or floor is sufficient to constitute a burning.

In *Carter*, it was undisputed that the building had been burned; the only issue was whether the defendant was the person responsible for the fire. The court cited *People v. Lueder* (1954), 3 Ill. 2d 487, 121 N.E.2d 738, for the proposition that the *corpus delicti* of arson is the burning of a building caused by an individual's criminal acts.

■ Although we believe that the evidence, reviewed below, was sufficient to satisfy the definition of a burning under *Oliff*, defendant's argument that the "essential element of burning" was not proved misapprehends the law. The statutes in effect when *Oliff* and *Lueder* were decided defined arson as the burning of a structure. (Ill. Rev. Stat. 1933, ch. 38, par. 48; Ill. Rev. Stat. 1953, ch. 38, par. 48.) However, under the current statute, arson occurs when, by fire or explosive, a person knowingly *damages* the property of another without the person's consent. (Ill. Rev. Stat. 1989, ch. 38, par. 20—1.) Aggravated arson occurs when in the course of committing arson, a person knowingly damages, partially or totally, any building or structure of another without his consent, and he knows or reasonably should know

that one or more persons are present in the building. (Ill. Rev. Stat. 1989, ch. 38, par. 20—1.1.) Neither provision uses any form of the word "burn."

At trial, the State presented testimony that the building was damaged by the fire. Gloria Snow testified that defendant gathered papers and leaves in the corner of the front entrance, shook liquid on them and set them afire. She further stated that defendant also poured gasoline into the mail slot and that there was a fire in the vestibule, onto which her daughter, Robresta, threw a pot of water, and that the floor was blackened. Kimberly Buckhalter and her mother, Katie Buckhalter, both testified that the front door was burned, the tile in the vestibule was blackened and a portion of the throw rug was burned. Officer Kostecki testified that when he arrived at the scene he saw "the front door *** on fire." He extinguished the fire not only by stomping on it with his feet but also by striking at it with a rag he found nearby. Officer Cruz testified that when he drove up, the front door of the building appeared to be on fire.

Defendant also argues that the testimony that there was a fire in the hallway was contradicted by Officer Kostecki, who testified that he did not see any fire inside. We note, however, that it was not until after Kostecki extinguished the fire outside that he entered the building. He testified that he was met at the doorway by a young woman carrying a pot. The vestibule smelled strongly of gasoline and the rug was saturated. Although he did not know whether the liquid on the floor was water, gasoline or both, his testimony is supportive of the residents' testimony that Robresta threw a pot of water onto the hallway floor to extinguish a fire there.

Further, the State introduced photographs of the premises taken after cleaning efforts by the residents. It appears from the photographs in the record that the wood on the bottom of the door and on the frame around the door was charred and scorched, rather than merely "smudged and discolored" by smoke as defendant argues. The inside of the door opposite the damaged outside section also appears scorched and blackened, and the vestibule tile at that location was also blackened. Viewing the evidence in the light most favorable to the prosecution, as we are bound to do (*People v. Byron* (1987), 116 Ill. 2d 81, 506 N.E.2d 1247), we find that the evidence was sufficient to sustain the jury's verdict.

Defendant also contends that the trial court infringed upon his constitutional right to present his theory of defense by disallowing cross-examination on whether the front door was replaced after the fire. Defendant asserts that the court's ruling that such evidence was

not relevant was erroneous because the State was required to prove that there was damage to the building, and evidence that the door was not replaced "tends to show that there was not damage" to it.

■ We find no merit in defendant's argument. The damage element of aggravated arson is satisfied by proof of even partial damage to the structure. (Ill. Rev. Stat. 1989, ch. 38, par. 20—1.1) The issue was not whether the damage was so extensive as to necessitate the door's subsequent replacement but simply whether the door was damaged by the fire. (See, e.g., People v. O'Dell (1980), 84 Ill. App. 3d 359, 405 N.E.2d 809 (proof of the value of real property damaged by arson is not required by the statute).) The testimonial and photographic evidence discussed above regarding the condition of the door established that it was damaged. The trial court correctly ruled that evidence that the door was not replaced subsequent to the fire was irrelevant. Moreover, we note that Katie Buckhalter testified that the vestibule tile was never replaced and that, notwithstanding the court's ruling, defense counsel remarked in closing argument that the photographs taken shortly after the fire showed "the way the door is today," thus apprising the jury that the door was never replaced.

Defendant next contends that the trial court erred in refusing to instruct the jury, as he requested, on the offenses of attempt, arson and criminal damage to property. Defendant asserts that there was evidence which, if believed by the jury, may have resulted in his being convicted of one of the lesser offenses and acquitted of aggravated arson.

■ It is well settled that a defendant may be entitled to have the jury instructed on a less serious offense that is included in the one with which he is charged. (People v. Bryant (1986), 113 Ill. 2d 497, 499 N.E.2d 413.) Where there is some evidence in the record which, if found credible by the jury, would reduce the crime to a lesser offense, an instruction on the lesser offense should be given. (People v. Upton (1992), 230 Ill. App. 3d 365, 595 N.E.2d 56.) The rationale for this principle is that an instruction on a lesser-included offense provides an important third option to a jury which, believing that the defendant is guilty of something but uncertain whether the charged offense has been proved, might otherwise convict the defendant rather than acquit him of the greater offense. People v. Bryant, 113 Ill. 2d at 502.

There are, however, limitations to the operation of the lesser-included offense doctrine. An included-offense instruction is required only in cases where the jury could rationally find the defendant guilty of the lesser offense and acquit him of the greater offense. (People v. Perez (1985), 108 Ill. 2d 70, 483 N.E. 2d 250.) If an instruction is war-

ranted because there is evidence which could rationally permit a jury to find a defendant guilty of a lesser offense than the one charged, it follows that the giving of an instruction might rationally be precluded by evidence negating the possibility of a finding of guilt of a lesser offense than the one charged. *People v. Bryant*, 113 Ill. 2d at 507.

In the present case, the trial court found no rational basis upon which the jury could find defendant guilty of any of the lesser offenses instead of the greater offense of aggravated arson. We agree with that finding.'

With respect to the tendered instruction on arson, there is no question that defendant knew that persons were present in the building. Thus, if the jury found that defendant committed arson, in that by means of fire he knowingly damaged, even partially, the structure on North Harding, it would have been bound to find defendant guilty of aggravated arson, which is the commission of arson with knowledge that persons are present in the building. The evidence establishing the presence of people in the building precluded the giving of an instruction on simple arson.

Defendant also argues that the jury should have been instructed on attempt because there was a dispute as to whether the building was burned by the fire that he set outside the door. He maintains that the jury could have concluded that the door never caught on fire, and, therefore, that he was guilty only of attempt rather than a completed crime.

Attempted arson occurs when a person intends to and takes a substantial step toward committing arson. As noted earlier, the present arson statute does not require a "burning." It is sufficient that defendant, by means of fire, knowingly damaged the building. Ill. Rev. Stat. 1989, ch. 38, par. 20—1.

Irrespective of whether the door caught fire, there was damage to the building attributable to the fire. The fact of damage is supported by the testimonial and photographic evidence that the building was damaged by the fire. The State presented evidence that after threatening to "take [the residents] all out," defendant purchased gasoline, sprinkled it around the outside of the house, in front of the door and into the vestibule, and gathered leaves and papers into a pile in front of the door, all of which demonstrated his intent to commit aggravated arson and were steps taken toward the commission of the offense. In addition, however, he then retrieved a lighter from his car and set the pile of debris on fire, which caused damage to the building inhabited by several persons. At that point defendant's conduct went from taking steps toward the commission of aggravated arson to the

actual commission of the offense. There was no evidence to support a finding that defendant merely attempted to damage the building by fire but withdrew from or otherwise terminated his criminal activity before completion of the offense.

Defendant also requested that the jury be instructed on criminal damage to property. The criminal damage to property statute provides, in relevant part:

"(1) A person commits an illegal act when he:

(a) knowingly damages any property of another without his consent; or

(b) recklessly by means of fire or explosive damages property of another; or

(c) knowingly starts a fire on the land of another without his consent." Ill. Rev. Stat. 1989, ch. 38, par. 21—1.

■ Initially, we note that subsection (b) is not a lesser-included offense of aggravated arson because the requisite mental states are different. (*People v. Ryan* (1981), 97 Ill. App. 3d 1071, 424 N.E.2d 20.) Recklessness is not an element of aggravated arson, which requires a knowing or intentional act. Recklessness is defined as a conscious disregard of a substantial and unjustifiable risk that circumstances exist or that a result will follow (Ill. Rev. Stat. 1989, ch. 38, par. 4—6), whereas "knowing" means a conscious awareness that such result is practically certain to be caused by the conduct" (Ill. Rev. Stat. 1989, ch. 38, par. 4—5).

Further, the record is devoid of evidence tending to show that defendant acted recklessly. Rather, the evidence was that defendant threatened the residents, drove to purchase an accelerant, gathered debris, poured gasoline around and into the building, and then purposefully set the debris on fire. His actions were clearly intentional and performed with the knowledge of the substantial risk and near certainty that the fire would damage the building in which persons were present. The trial court correctly refused to instruct the jury on subsection (b) of the criminal damage to property statute.

Defendant retorts, however, that subsections (a) and (c) both require a "knowing" act, and are, therefore, lesser-included offenses of aggravated arson. We disagree.

Subsection (a) is general in its scope, making it an illegal act for anyone to knowingly damage the property of another without his consent. The conduct of damaging the property of another by means of fire is specifically addressed in subsection (b) and requires the less culpable mental state of recklessness. It would appear that the General Assembly recognized the uniquely dangerous characteristics of fire

and explosives in carving out a separate subsection which imposes the same punishment for the conduct of damaging property by fire as other types of damage to property, but upon proof of a less culpable mental state. We do not believe that subsection (a) applies to the knowing damage of property by fire.

Moreover, upon proof that defendant knowingly damaged the building by fire, the jury was bound to convict defendant of aggravated arson. The knowing damage of property by means of fire constitutes arson, and, as we discussed earlier, aggravated arson occurs when a person commits arson knowing that persons are present in the structure.

Similarly, we do not believe that subsection (c) is a lesser-included offense of aggravated arson. In a case where the charged offense is arson, it could, conceivably, be appropriate to instruct a jury on subsection (c), if there was evidence that the fire was located only on the *land* of another, *e.g.*, on the front parkway of the property. However, in this case although the fire was technically started on the ground, or "land," the ground involved was the cement entranceway to the building; and, as shown by the photographs, the leaves were placed up against the wooden frame of the building's front door. When those leaves were set afire, damage was caused to various portions of the building. This result established the offense of arson, and because the building was inhabited by several persons, the offense of arson was enhanced to the offense of aggravated arson.

Defendant's final contention is that the aggravated arson statute is unconstitutional for two reasons. He asserts (a) that it violates the constitutional guarantee of penalties proportionate to the seriousness of the offense and (b) his right to due process.

■ We first consider defendant's assertion that the statute violates due process because it does not require a greater culpable intent than the underlying offense of arson. In *People v. Wick* (1985), 107 Ill. 2d 62, 481 N.E.2d 676, the supreme court struck down subsection (a)(3) of the aggravated arson statute as unconstitutional, and in *People v. Johnson* (1986), 114 Ill. 2d 69, 499 N.E. 2d 470, the court likewise struck down subsections (a)(1) and (a)(2). In both cases, the basis of the court's rulings was that the statute did not require an unlawful purpose in setting a fire and therefore could have led to punishment of innocent as well as culpable conduct. The *Johnson* court observed that although the legislature intended to provide for an aggravated form of arson and intended the factors in subsections (1) (2) and (3) to enhance the offense from simple arson to aggravated arson the legislature did not define an underlying offense.

After *Johnson,* the General Assembly amended section 20—1.1, effective December 9, 1985. In *People v. Zeisler* (1990), 125 Ill. 2d 42, 48-49, 531 N.E.2d 24, 27-28, the supreme court stated that the amendment "rectified an important substantive element of aggravated arson because the revision incorporates the underlying offense of arson," which requires knowing damage to property by means of an unlawfully set fire. (See also *People v. Brent* (1988), 175 Ill. App. 3d 459, 530 N.E.2d 43.) In comparison to the arson statute, however, subsection (a)(1) of the aggravated arson statute, under which defendant was charged, additionally requires a showing that the offender committed the arson with the knowledge that someone was in the structure. In upholding a conviction under this section, the court in *People v. Thomas* (1990), 137 Ill. 2d 500, 521, 532, 561 N.E.2d 57, found it clear that the aggravated arson statute is designed to escalate the punishment for arsons committed with the knowledge by the offender that someone is likely to get hurt or killed or for arsons that actually cause injury or death. Thus, defendant's argument that subsection (a)(1) of the aggravated arson statute is invalid because it does not require specific intent to kill or harm persons or any different mental state than does the arson statute is without merit.

Defendant also argues that the aggravated arson statute, as applied to him, is unconstitutional because, as a Class X felony, the penalty is disproportionate to the seriousness of the offense. He argues that unlike the harm caused by other Class X felonies, such as murder, aggravated criminal sexual assault and armed robbery, there was no injury to anyone in this case, and the property damage amounted to no more than the smudging of the front door from the smoke of the burned leaves, which were extinguished without the aid of the fire department and without the necessity for evacuation of the building.

The legislature has wide discretion under the State's police powers to prescribe penalties for defined offenses. The standard of a proper exercise of the police power is whether the statute is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare. The determination of reasonableness is a matter for the courts, and legislation will not be invalidated unless the challenged penalty is clearly in excess of the very broad and general constitutional limitations applicable. *People v. Morris* (1990), 136 Ill. 2d 157, 554 N.E.2d 235.

■ Initially, we reiterate our earlier determination that the testimonial and demonstrative evidence presented in this case belies defendant's assertion that the property damage consisted only of smoke discoloration and smudging. Further, it is immaterial, under

the statute, whether defendant intended to kill or injure anyone or, even, that no one was injured as a result of his conduct. The gist of subsection (a)(1) is to punish more severely than the arson statute an arson which could cause death or injury to persons the arsonist knows or should know are inside the structure. *People v. Thomas,* 137 Ill. 2d at 532.

In this case, the arson occurred during the early morning hours when several people in the apartment building were sleeping. Defendant poured gasoline around the outside and into the vestibule of the building, lit the fire at the front door, potentially preventing any escape from that exit of the building, and then attempted to leave the scene. It was fortuitous that Gloria Snow and her daughter were awake and able to summon the police, that the responding officers were only a few blocks away, and that they were therefore able to respond promptly and extinguish the fire before it grew to catastrophic proportions. However, defendant should not be allowed to benefit from the prompt action of the potential victims and the police, without which defendant's conduct may well have resulted in injury to or the death of one or more of the six persons in the building. Moreover, although defendant was eligible for a sentence of up to 30 years' imprisonment under the Class X sentencing provision, the trial court imposed a term of 12 years, only 6 years greater than the minimum. See *People v. Burrett* (1991), 216 Ill. App. 3d 185, 576 N.E.2d 293 (18-year sentence upheld where firebombing caused only property damage).

It is well settled that legislative enactments carry a strong presumption of constitutionality, and, thus, a party challenging a statute has the burden of clearly establishing its invalidity. It is the duty of the courts to construe acts of the legislature so as to affirm their constitutionality and validity if it can be reasonably done, and any doubts are to be resolved in favor of the validity of the statute. (*People v. Inghram* (1987), 118 Ill. 2d 140, 514 N.E.2d 977.) In the instant case, defendant has failed to establish a constitutional infirmity in the aggravated arson statute as written or in its application to him.

For the reasons stated, defendant's conviction and sentence are affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.