In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 15-3856

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LLOYD B. LOCKWOOD,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:12-cr-20070 — **Harold A. Baker**, *Judge.*

———————————

ARGUED SEPTEMBER 22, 2016 — DECIDED NOVEMBER 1, 2016

———————————

Before BAUER, POSNER, and MANION, *Circuit Judges.*

MANION, *Circuit Judge.* This case returns for a second time. Lloyd Lockwood appeals his 120-month sentence for possession of a destructive device. Previously, we vacated Lockwood's first sentence of the same length. This time, for the reasons set forth below, we affirm.

## I. Background

### A. Conviction and First Sentencing[1]

In an attempt to gain an advantage in a family dispute, Susie Curtis asked her longtime friend Lloyd Lockwood to place a package in her brother's truck and then report to the police that it contained a bomb. Lockwood agreed to do it, but upon arrival at the brother's house, he failed to locate the truck. As a result, Lockwood decided to place the bomb in the brother's mailbox. He then immediately called the police and reported that the brother had a bomb and planned to blow up his office. An initial bomb-squad search turned up nothing, but Curtis's sister-in-law discovered the package in the couple's mailbox later that day. Authorities determined that the package contained a pipe bomb that was incapable of detonation because it was not connected to a power source.

After reviewing Curtis's phone records, federal agents zeroed in on Lockwood. The government eventually charged him with possession of a destructive device. Before trial, Lockwood stipulated that the pipe bomb qualified as a destructive device under federal law. As a result, he necessarily staked his entire defense at trial on his supposed ignorance that the package contained a bomb. The jury was unconvinced and convicted him.[2]

---

[1] A more detailed recitation of the facts relating to Lockwood's conviction is set forth in our initial decision in this case. *United States v. Lockwood*, 789 F.3d 773 (7th Cir. 2015) (*Lockwood I*). We present a brief summary here for the sake of clarity.

[2] The presiding district judge retired after the trial. Judge Baker was assigned to the case for sentencing.

The district court sentenced Lockwood to the statutory maximum 120 months' imprisonment, well above the Guidelines range of 33–41 months. The court concluded that Lockwood had to be incapacitated, but it based that finding on only a short, non-detailed description of Lockwood's criminal history and a cursory discussion of the crime of conviction. *See Lockwood I*, 789 F.3d at 778–79.

On appeal, we affirmed his conviction but vacated his sentence. We held that the district court did not explain adequately "why Lockwood is different from the vast majority of defendants" who receive within-Guidelines sentences. *Id.* at 782. In short, the district court's description of Lockwood's crime and brief notation of his "extensive criminal record" was insufficient to show why Lockwood should receive a sentence nearly three times the top of the Guidelines range. *Id.*

## B. Resentencing

On remand, the district court again imposed a 120-month sentence. This time, however, it detailed its justification in a lengthy sentencing order. The court recounted testimony from Lockwood's ex-wife and her sister, both of whom spoke about Lockwood's propensity for violence that continued even while he was on pretrial release in this case. Although Lockwood's criminal history category was I, the court found that "his Guideline criminal history and criminal history category do not reflect the full magnitude of his criminal conduct." It extensively detailed his troubling history, which includes several domestic incidents wherein he threatened to kill women, one of which resulted in a conviction for aggravated arson when he burned down a girlfriend's apartment building. *See People v. Lockwood*, 608 N.E.2d 132 (Ill. Ct. App. 1992).

Ultimately, the district court concluded that Lockwood should be incapacitated for a significant time to protect the public and those closest to him. Based on the evidence and Lockwood's demeanor, the court deemed Lockwood a "sociopath" who showed little remorse for his actions and had made a lifetime of excuses for criminal behavior. Since the court held "very little hope for Lockwood's rehabilitation or behavior modification," it sentenced him to the ten-year maximum. Again, Lockwood timely appealed.

## II. Discussion

### A. Procedural Soundness

We review Lockwood's procedural challenge *de novo*. *Lockwood I*, 789 F.3d at 781. "A sentencing court commits procedural error by not adequately explaining its choice of sentence." *Id.* (quoting *United States v. Lyons*, 733 F.3d 777, 784 (7th Cir. 2013)). To ensure that the sentencing judge did not commit any "significant procedural error," *Gall v. United States*, 552 U.S. 38, 53 (2008), we examine whether the district court: i) properly calculated the Guidelines range; ii) recognized that the Guidelines range was not mandatory; iii) considered the sentencing factors in 18 U.S.C. § 3553(a); iv) selected a sentence based on facts that were not clearly erroneous; and v) adequately explained the chosen sentence including an explanation for any deviation from the Guidelines range. *Lockwood I*, 789 F.3d at 781.

If the sentencing court decides that an above-Guidelines sentence is warranted, it must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance." *Gall*, 552 U.S. at 50.

The court must "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* The sentencing judge also must address a defendant's "principal arguments in mitigation unless they are too weak to merit discussion." *United States v. Garcia-Segura*, 717 F.3d 566, 568 (7th Cir. 2013). The ultimate question is not whether the sentence imposed could be a reasonable one, but whether the reasons given are sufficiently compelling to support the upward departure. *Lockwood I*, 789 F.3d at 781.

In this case, the district court properly calculated the Guidelines range, acknowledged that the range was mandatory, and considered the Section 3553(a) factors. Thus, only the final two, somewhat related procedural requirements are at issue. Lockwood contends that the district court relied on erroneous facts and failed to explain adequately the upward departure. According to Lockwood, the court made four specific errors: (1) it improperly credited the testimony of his ex-wife and former sister-in-law to establish his propensity for violence; (2) it improperly inferred that the pipe bomb he deposited was capable of harm; (3) it relied too heavily on his criminal history despite the age of his convictions; and (4) it failed to sufficiently address his mitigation arguments. Lockwood's first two arguments allege that the district court relied on clearly erroneous facts, while the third alleges a failure to explain the chosen sentence adequately. We consider and reject these arguments in turn.

### 1. Sisters' Testimony

Lockwood contends that the district court should have disregarded some of Crystal Jarvis's testimony. He says that Jarvis, his former sister-in-law, was clearly biased and that

part of her testimony was fatally inconsistent. Lockwood particularly takes issue with Jarvis's claim at the hearing that Lockwood had a gun when he threatened her while on release in this case. That testimony contradicts what she told police when she first reported the incident in 2012. The district court credited her in-court testimony and found that Lockwood pointed a gun at her and threatened to kill her.

"[D]eterminations of witness credibility are entitled to great deference and 'can virtually never be clear error.'" *United States v. Ortiz*, 431 F.3d 1035, 1039 (7th Cir. 2005) (quoting *United States v. Blalock*, 321 F.3d 686, 690 (7th Cir. 2003)). Unless a witness's testimony describes events that are impossible, either physically or under the laws of nature, the district court is within its discretion to credit that testimony. *Id.* Inconsistencies in a witness's testimony are not enough to meet this standard. *See id.* at 1040. Nor is potential bias. Indeed, a district court "may credit testimony that is 'totally uncorroborated and comes from an admitted liar, convicted felon, or large scale drug-dealing, paid government informant.'" *United States v. White*, 360 F.3d 718, 720 (7th Cir. 2004) (quoting *Blalock*, 321 F.3d at 690). The court's decision to credit Jarvis's testimony was not clear error.

Next, Lockwood takes issue with the district court's recitation of certain testimony from his ex-wife, Tonya Sexton. Specifically, the court recounted that "Sexton spoke of evidence of fires (a charred paper towel stuffed into her car's fuel tank filler neck, and a fire smouldering upstairs in their house after Lockwood left the house one morning)." It cautioned that Sexton "could not be sure Lockwood had anything to do with either occurrence," but noted that "Lockwood is no stranger to fire as a means of intimidation."

Lockwood claims that the district court improperly inferred that he was involved in those incidents. The text of the sentencing order says otherwise. The court credited Sexton's testimony that the incidents occurred, but also her uncertainty about Lockwood's involvement. It also alluded to Lockwood's past arson conviction. That is not equivalent to a factual finding that Lockwood was involved in the incidents with Sexton. The court did not rely on any clearly erroneous facts with respect to her testimony.

### 2. The Bomb's Ability to Cause Harm

Lockwood next contends that the district court improperly inferred that the bomb he possessed was capable of harm. The sentencing order does say that Lockwood's placement of the bomb in the mailbox "expos[ed] the mail carrier to harm." But this is little more than a stray remark. The footnote attached to it dispels any concern that the court relied on a clearly erroneous fact.[3] The court knew that the bomb was not capable of detonation, so it could not possibly have relied on the fact that it was so capable.[4]

---

[3] The footnote recognizes that "[t]he bomb was not attached to an energy source."

[4] Even if the use of the word "harm" was perhaps a poor choice, it was at most harmless error. Error is harmless when it "did not affect the district court's selection of the sentence imposed." *United States v. Glosser*, 623 F.3d 413, 419 (7th Cir. 2010) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)). The district court's stray statement that Lockwood's actions "expos[ed] the mail carrier to harm" did not affect the court's overall analysis and choice of sentence. That sentence was instead based on the evidence of Lockwood's propensity for violence and his failure to show any remorse or accept responsibility for his actions.

### 3. Reliance on Lockwood's Criminal History

Lockwood contends that the district court did not adequately explain its upward departure because it again focused too heavily on his criminal history. In *Lockwood I*, we held that the district court erred when it "focused almost exclusively on Lockwood's previous criminal history, but sprinkled in a mention of his current offense and two comments about the need to incapacitate him." *Lockwood I*, 789 F.3d at 782–83. We found that insufficient to justify a sentence almost three times the upper Guideline. According to Lockwood, the district court has repeated its error.

The sentencing order on remand bears little resemblance to the brief comments the judge made at Lockwood's first sentencing hearing. We described the court's justification for Lockwood's first sentence as merely a "truncated reference to [his] criminal history, a mention of the current offense, and two comments about incapacitation." *Id.* at 783. At resentencing, the court significantly expanded on its discussion of Lockwood's dangerous history. It also credited the testimony of Jarvis and Sexton that described Lockwood's propensity for violence against women and showed that it was not behind him. In short, the court provided much more than a truncated reference to Lockwood's history.

Moreover, the district court specifically addressed the necessity of an upward departure in Lockwood's case. The sentencing order explained in detail how his criminal history category (I) does "not reflect the full magnitude of his criminal conduct." In *United States v. McIntyre*, 531 F.3d 481 (7th Cir. 2008) (per curiam), we recognized that an upward departure may be appropriate when a defendant's criminal history category underrepresents his actual criminal history. There, the

defendant had engaged in a life of crime and would have been sentenced as a career offender "had it not been for a quirk in Massachusetts law." *Id.* at 484. We affirmed his 144-month sentence for bank robbery although the top of the Guidelines range was just 46 months. *Id.* at 482. This case is quite similar. The district court adequately explained that Lockwood would have been sentenced as an Armed Career Criminal but for our decision in *Buchmeier v. United States*, 581 F.3d 561 (7th Cir. 2009). This was sufficient justification for the upward departure.

Finally, the court made some other observations that distinguish Lockwood from the run-of-the-mill offender. Specifically, the court focused on Lockwood's refusal to take responsibility for his actions. It labeled his statement in allocution a "denial of reality" and found that his actions exhibited a "total lack of concern for the results of his conduct." That is why the court thought Lockwood a "sociopath" with "very little hope" of rehabilitation. This explanation, coupled with the Guidelines' underrepresentation of Lockwood's criminal history, was not reversible error.

### 4. Lockwood's Mitigation Arguments

As Lockwood correctly points out, sentencing courts "must address a defendant's principal arguments in mitigation unless they are too weak to merit discussion." *Garcia-Segura*, 717 F.3d at 568. However, the sentencing order did reject all three mitigation arguments raised in Lockwood's brief. The first two—Lockwood's supposed expression of remorse and the staleness of his criminal history—require little further explanation. As discussed above, the district court simply did not believe that Lockwood was remorseful and thought his criminal history category significantly undersold the nature

of his past. The court also rejected Lockwood's final argument that he had been operating a legitimate car repair business for several years since he had been out of prison, finding instead that the business had operated at a loss. In sum, the district court satisfied the procedural requirement that it address all of Lockwood's principal mitigation arguments.

### 5. Overall Procedural Soundness

Having rejected Lockwood's objections to the sentencing order, we conclude that the district court adequately explained its choice of sentence and did not rely on any erroneous facts in the sentencing order. Therefore, Lockwood's resentencing was free from procedural error.

### B. Substantive Reasonableness

We review the substantive reasonableness of a sentence only for abuse of discretion. *United States v. Aldridge*, 642 F.3d 537, 544 (7th Cir. 2011). We will affirm the sentence "so long as the district court offered an adequate statement of its reasons, consistent with 18 U.S.C. § 3553(a), for imposing such a sentence." *McIntyre*, 531 F.3d at 483. "There is no presumption that a sentence outside the guidelines' range is unreasonable." *Aldridge*, 642 F.3d at 544 (citing *Gall*, 552 U.S. at 51).

Lockwood proffers just one further argument. He contends that a statutory maximum sentence is unreasonable because many offenders receive less severe sentences for "worse" conduct, such as possession of a pipe bomb capable of detonation. Lockwood reasons that his sentence leaves no room for more culpable offenders to be sentenced more severely. He says that his sentence creates a significant risk of unwarranted sentencing disparities between defendants.

Lockwood relies on *United States v. Kirkpatrick*, 589 F.3d 414 (7th Cir. 2009), and *United States v. Snyder*, 635 F.3d 956 (7th Cir. 2011). *Kirkpatrick* involved a felon-in-possession defendant who was sentenced to 108 months' imprisonment despite a Guidelines range of 37–46 months. The defendant had caused federal agents to waste 200 hours of investigatory time when he lied about killing four people and placing a contract hit on the federal agent investigating his case. *Kirkpatrick*, 589 F.3d at 415. We vacated the sentence because the district judge had "proceeded as if any sentence within the statutory maximum (10 years) needs no explanation beyond the conclusion that something more than the top of the Guidelines' range is in order." *Id.* In other words, the court failed to explain why such a significant departure was warranted. The sentence appeared to have been "chosen arbitrarily." *Id.*

In *Snyder*, we vacated a statutory-maximum two-year sentence because the district court had failed to consider the Guidelines range at all. 635 F.3d at 961. Because of that failure, we were not certain that the district court had "considered whether imposing what it believed to be the harshest possible sentence would lead to unwarranted disparities among similarly situated defendants." *Id.* Indeed, we clarified that "[h]ad the district court correctly calculated and carefully reviewed the Guidelines range, we would be more confident that it also considered the need to avoid unwarranted disparities." *Id.* The district court's failure to consider the Guidelines range doomed the sentence.

Neither case helps Lockwood. *Kirkpatrick* stands for the proposition that sentencing judges must carefully explain significant upward departures from the Guidelines range. We af-

ford significant deference to carefully explained upward departures. *Kirkpatrick*, 589 F.3d at 415. And *Snyder* holds only that district courts must carefully consider the Guidelines range before imposing an above-Guidelines sentence. Indeed, the Supreme Court has said that once a district judge does this, "he necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities." *Gall*, 552 U.S. at 54.

In this case, the district court provided a careful, lengthy explanation for Lockwood's statutory-maximum sentence and the upward departure from the Guidelines. It explained that Lockwood's propensity for violence and lack of remorse warranted a much harsher sentence than Curtis received for the same crime. The simple fact that Lockwood received a harsher sentence than some defendants convicted of similar crimes does not establish an unwarranted disparity. In our legal tradition, each defendant is treated as a unique individual and "every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Id.* at 52. We hold that the district court did not abuse its discretion in sentencing Lockwood to 120 months' imprisonment.

### III. Conclusion

The sentencing order on remand adequately explains the district court's decision to sentence Lockwood to the statutory maximum of 120 months. We find no procedural error and conclude that his sentence is within the bounds of substantive reasonableness.

AFFIRMED.