NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 8, 2021
Decided November 9, 2021

*Before*

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 20-3356

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 20-cr-50-wmc |
| THEODORE THURMAN, *Defendant-Appellant*. | William M. Conley, *Judge*. |

**O R D E R**

Theodore Thurman pleaded guilty to one count of escape from custody after he absconded from a halfway house where he was serving a federal sentence. *See* 18 U.S.C. §§ 751(a), 4082(a). The district court sentenced him to a prison term of 24 months and no supervised release. Thurman appeals, but his appointed counsel asserts that the appeal is frivolous and moves to withdraw. *See Anders v. California*, 386 U.S. 738, 744 (1967). Counsel's brief explains the nature of the case and addresses potential issues that an appeal of this kind would be expected to involve. Because her analysis appears

thorough, and Thurman has not responded, *see* CIR. R. 51(b), we limit our review to the subjects that counsel discusses. *See United States v. Bey*, 748 F.3d 774, 776 (7th Cir. 2014).

Thurman was sentenced in the Northern District of Illinois to 33 months' imprisonment and two years' supervised release for unlawfully possessing a firearm and distributing marijuana. When he was serving part of that sentence at a halfway house in Janesville, Wisconsin, he left without permission one night and did not turn up for about four months. He would later explain that his infant daughter's mother, who lived in Illinois with their daughter, had told him that she would kill herself. Fearing for his daughter's safety, Thurman fled to Illinois to place her in the care of his mother. But he then traveled from Illinois to Arizona, where he later caught the attention of law enforcement for possessing a firearm while a passenger in a stolen car containing drugs and stolen identification and credit cards. The driver told local police that Thurman acted as protection while she sold drugs and that she gave Thurman the weapon. The authorities released Thurman without filing charges, and Thurman returned to Illinois, where he was later arrested and detained until a grand jury in the Western District of Wisconsin indicted him.

At a hearing held by videoconference, Thurman pleaded guilty to a single-count indictment charging him with escape from federal custody under 18 U.S.C. §§ 751(a) and 4082(a). The district court proceeded immediately to sentencing. Thurman's presentence investigation report set a range of 18 to 24 months' imprisonment under the Sentencing Guidelines, based on a criminal history category of IV and a total offense level of 11. Thurman did not object to those calculations. After hearing argument, the court sentenced Thurman to 24 months in prison without additional supervised release, explaining that the sentence was necessary to hold him accountable, provide him the opportunity to participate in rehabilitative programs, and protect the community.

Counsel informs us that she consulted with Thurman and confirms that he does not wish to withdraw his guilty plea, so counsel properly omits discussion of any arguments related to the plea's validity. *See United States v. Konczak*, 683 F.3d 348, 349 (7th Cir. 2012); *United States v. Knox*, 287 F.3d 667, 670–71 (7th Cir. 2002).

With respect to the sentence, counsel first considers whether there might be a nonfrivolous challenge that the hearing via videoconference, as authorized by the CARES Act, Pub. L. No. 116-136, § 15002(b)(2)(A), 134 Stat. 281, 528–29, violated Rule 43 of the Federal Rules of Criminal Procedure. But she explains that Thurman does not wish to raise the issue on appeal because he does not want to be sentenced in person: it would jeopardize his placement in prison programs, which could delay his release.

Lawyers need not raise issues on appeal that would not be in their client's interest. *United States v. Caviedes-Zuniga*, 948 F.3d 854, 855 (7th Cir. 2020).

Counsel next considers whether Thurman could challenge the district court's decision not to apply a downward adjustment to his offense level under the Sentencing Guidelines. Counsel believes that Thurman waived the issue by stating that he had no objections to the presentence report. Even if it were only forfeited, however, any challenge to the offense level would be frivolous under plain-error review. Under U.S.S.G. § 2P1.1(b)(2), the offense level can be decreased if the defendant returned voluntarily within 96 hours of escape, which Thurman did not do. Second, if the escaped-from facility is a halfway house, an offense-level decrease can be applied, provided the defendant did not commit a felony while out. *Id.* § 2P1.1(b)(3). Though Thurman was never charged, the court found it more likely than not that he committed a felony during his escape. *See United States v. Holton*, 873 F.3d 589, 591–92 (7th Cir. 2017) (Judges may "consider at sentencing criminal conduct … even if the defendant was not convicted … 'so long as that conduct has been proved by a preponderance of the evidence.'" (quoting *United States v. Watts*, 519 U.S. 148, 157 (1997))). The PSR detailed Thurman's conduct while in Arizona, which included aiding in the distribution of marijuana and possessing a firearm.

Finally, counsel rightly concludes that challenging the substantive reasonableness of Thurman's sentence would be pointless. The within-guidelines prison term of 24 months is presumptively reasonable. *See United States v. Clay*, 943 F.3d 805, 809 (7th Cir. 2019). The presumption would hold here because the district court explained why the sentence was warranted under the sentencing factors in 18 U.S.C. § 3553(a). *See United States v. Lockwood*, 840 F.3d 896, 903 (7th Cir. 2016). It noted that Thurman offered some compelling mitigation arguments: he had a supportive family, had struggled with substance abuse since his father passed away, and had originally left the halfway house because he feared for his daughter's safety. But the court found that Thurman had not seriously confronted his substance abuse. Further, ensuring his daughter's welfare took a few days, but Thurman remained on the run for almost four months. And during that time, he exhibited the same criminal behavior that landed him in prison in the first place, demonstrating that he remained a risk to the community.

Therefore, we GRANT counsel's motion to withdraw and DISMISS the appeal.