THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TIMOTHY KYLES, Defendant-Appellant.

First District (2nd Division)    No. 1—97—0198

Opinion filed December 29, 1998.—Rehearing denied April 14, 1999.

Rita A. Fry, Public Defender, of Chicago (Hugh Stevens, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Jon J. Walters, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

The defendant, Timothy Kyles, was charged by information with two counts of aggravated battery of two correctional officers (720 ILCS 5/12—4(b)(6) (West 1994)) and attempted aggravated arson (720

ILCS 5/8—4, 20—1.1(a)(1) (West 1994)). After a bench trial, he was found guilty of the two counts of aggravated battery and one count of criminal damage to property less than $300. He was sentenced to concurrent terms of 10 years' imprisonment for each count of aggravated battery and 364 days' imprisonment for criminal damage to property to run consecutive to the term of 55 years' imprisonment for defendant's conviction on an earlier unrelated charge.

On appeal, the defendant argues that his conviction for criminal damage to property must be reversed because he was not charged with that offense and because the court did not identify the subsection of the criminal statute upon which that conviction was based. The defendant also argues that his conviction for aggravated battery must be reversed because he was not proven guilty of that offense beyond a reasonable doubt. Finally, the defendant argues that the 10-year sentence for each of the aggravated battery convictions was excessive and inconsistent with the seriousness of those offenses. For the reasons discussed below, we affirm.

The defendant was convicted of aggravated battery on August 19, 1995, of two Cook County jail correctional officers, Alex Cruz and John Shury. Both officers were assigned to the special incarceration unit of the jail. That unit holds high risk inmates, inmates who have committed crimes within the jail system. In that location of the jail, inmates spend 23 hours in their cells and one hour outside their cells. Cell doors are not opened unless a supervisor is present.

The evidence at trial showed that at approximately 10 a.m. on August 19, 1995, the defendant, who was being held in the special incarceration unit of the jail, asked to be let out of his cell so that he could speak with a supervisor. Cruz and Shury told Kyles they could not open his cell door and that he would see a supervisor when one arrived. The defendant made several more requests, threatened to shoot Cruz and Shury once he was released from prison, and then threatened "to burn the place down." Later, the officers noticed smoke coming from the bottom of defendant's steel cell door. They called Captain Hatcher, the supervisor on duty, and Lieutenant Howell, the shift commander.

Hatcher arrived about two minutes later. He ordered the opening of Kyles' cell door and the removal of Kyles from his cell. Lieutenant Howell opened the cell door. Defendant's mattress, sheets, blankets, toilet paper, and other paper were placed together in a pile near the door and were in flames. Kyles was ordered several times to come out of his cell but at those times he either made no response or verbally refused to come out, telling the officers to "come in and get me." Captain Hatcher ordered Cruz, Shury, and Howell to go into Kyles' cell and to remove him.

Officer Cruz testified that when he and Shury entered defendant's cell, Kyles attacked them. He stated that he was punched and kicked in his face, chest, arms and legs. Kyles punched and threw Shury to the ground and then threw him (Cruz) to the ground. Cruz stated that eventually he and Shury gained control over Kyles, grabbing and dragging him from his cell. They then placed Kyles in handcuffs, searched him and put out the fire. Cruz stated that everything in Kyles' cell was burnt: the bedding and blankets were destroyed, and the cement floor and walls were charred black.

With respect to his injuries, Cruz testified his hand was swollen, causing him a great deal of pain, and he suffered abrasions to his legs, face and chest. Cruz stated that he obtained medical attention for his injuries at Cermak Hospital. He stated that X rays were taken, his arm and wrist were wrapped, and he was given pain killers. He was told to visit his physician. On cross-examination, Cruz admitted that the only injuries he reported in the disciplinary report he signed regarding the August 19, 1995, incident were injuries to his right hand and arm. He also stated that his report indicated that, during the struggle, Kyles fell backwards, injuring the rear of his head, and received medical treatment for possible smoke inhalation and injuries sustained during the physical confrontation. Cruz stated that he did not know how Kyles sustained three broken fingers, a broken ankle, and two skull fractures. He viewed pictures of Kyles, defendant's exhibit numbers 2 through 7, showing those injuries and testified that he did not notice those injuries on August 19, 1995.

With respect to the injuries sustained by Shury on August 19, 1995, Shury testified that the defendant kicked and punched him and struck him in the hand. Shury fell to the ground after tripping over the mattress. Shury sustained a swollen left hand and a laceration at the base of his left thumb. On cross-examination, Shury testified Kyles did not throw him to the ground but did throw Cruz to the ground. Shury viewed defendant's exhibit number 2 and indicated that he did not know how Kyles sustained the injuries depicted in that picture.

Lieutenant Raymond Howell testified that he entered Kyles' cell with Officers Cruz and Shury. Howell testified that he was hit by Kyles and knocked to the floor but received no injuries. Howell testified that he viewed the damage to Kyles' cell, which he stated included black ash to the walls and ceiling, water on the floor, and destruction of the mattress and blankets. Howell stated that this damage was in excess of $150.

The defendant called Robert Rosol, the paramedic at the jail who examined Kyles on the night of August 18, 1995, and the morning of August 19, 1995. Rosol stated that Kyles was treated for a laceration

on his left index finger on August 18, 1995, and on August 19, 1995, in addition to having that laceration, Kyles had some blunt head trauma and a scratch or a cut. Rosol told the officers that Kyles would have to be taken to Cermak Hospital. Rosol did not treat the officers but did give one of the officers a bandage for his hand or wrist. He stated that one of the officers did complain of injuries and asked for assistance. Rosol examined defendant's exhibit numbers 2 through 7, which showed, among other things, defendant's broken ankle and skull fractures. Rosol testified that when he examined Kyles on August 19, 1995, Kyles' left arm was not disfigured nor had Kyles suffered a broken ankle or the two head injuries in the photographic exhibits.

Defendant Kyles testified that he was transferred to the special incarceration unit on August 18, 1995, for having possession of two mobile telephones and a battery. He stated that on August 19, 1995, while on that unit, he was questioned by Officers Cruz and Shury. Later that morning, he again was questioned by Cruz and Shury as well as by Lieutenant Howell and Captain Hatcher. Kyles testified that they inquired as to the identity of the officer who brought the telephones to Kyles. Kyles further testified that when he refused to identify the individual, the officers beat him, causing the head trauma and finger laceration observed by Rosol. Kyles stated that he was taken to Cermak Hospital, after being shackled and handcuffed. He remembered walking over to the hospital with the correctional officers and later waking up at the hospital with a broken thumb, two head injuries, a fractured ankle and a middle finger that "was completely cut off and sewed back on." Kyles denied setting a fire in his cell and denied assaulting the correctional officers.

On cross-examination, Kyles testified that he was questioned in his cell by Cruz, Shury, Howell, Hatcher and two investigators regarding the identity of the officer who gave him the mobile telephones. He testified that when he refused to answer their questions, they left. Cruz, Shury, Howell and Hatcher returned later and all four of them beat him. They used handcuffs and a flashlight, and Shury hit him over the head with a radio. Kyles denied pushing, kicking or punching any of the officers.

Lieutenant Howell was called by the State as a rebuttal witness. He testified that he first entered Kyles' cell at approximately 10 a.m. on August 19, 1995, in the company of Officers Cruz and Shury. He stated that the cell was filled with smoke and flames and that Kyles was found holding a wet, white towel wrapped over his face. Howell further stated that he did not strike or punch Kyles and never saw anyone else punch or strike Kyles with handcuffs or a radio.

Based upon this testimony, the trial court found the defendant

guilty of criminal damage to property, less than $500, and two counts of aggravated battery. At the sentencing hearing, at the request of the assistant State's Attorney, the court amended the presentence report to indicate that the defendant was found guilty of misdemeanor criminal damage to property less than $300.

Evidence offered by the State in aggravation included testimony from Sergeant John Hanson of the Cook County department of corrections. He testified that at approximately 5 p.m. on August 18, 1995, he was called to the pump room, a holding area, which had several glass block windows, a water heater, cast iron radiator, sewage pipes and light fixtures. Kyles was found in that room holding a pipe torn off the radiator, striking the cast iron stacks, breaking the glass block windows and knocking out light fixtures. Kyles also threw one of the pipes at the jail superintendent. The damage caused by Kyles totalled over $5,500.

Hanson explained that Kyles had been put in the pump room holding area because he had been inciting prisoners during a prison-ordered search of the inmates. He stated that a search of Kyles' socks revealed the presence of cellular phones and batteries. Hanson stated that Kyles was transferred to the special incarceration unit after this incident. On cross-examination, Hanson stated that the transfer resulted from the incident in the pump room and not from the possession of the mobile telephones.

In further aggravation, the State offered evidence of defendant's five findings of delinquency as a juvenile, defendant's 1991 conviction for armed robbery and sentence of seven years' imprisonment, and defendant's 1996 conviction for aggravated vehicular hijacking and sentence of 55 years' imprisonment, the charge for which the defendant was awaiting trial when the instant offense was committed. In mitigation, the defendant stated that he had an eight-year-old daughter.

The trial court sentenced the defendant to an extended term for the aggravated battery convictions based upon the defendant's prior felony conviction. The defendant was sentenced to concurrent terms of 10 years' imprisonment on each of the two aggravated battery counts and 364 days' imprisonment for the criminal damage to property conviction to run consecutively with the 55-year sentence imposed on the prior aggravated vehicular hijacking conviction.

On appeal, the defendant first contends that his conviction for criminal damage to property must be reversed because the court did not determine which subsection of the criminal damage to property statute he violated.

As stated above, the defendant was charged by information with

two counts of aggravated battery and one count of attempted aggravated arson. The charge for the latter offense alleged that the defendant took a substantial step toward the commission of the offense of aggravated arson in that he

"by means of fire ignited his mattress in his jail cell located in Division 9 of the Cook County Jail, and *** knew that one of [sic] more person [sic] were present therein in the jail building in violation of Chapter 720, Act 5, Section 8—4(20—1.1—A(1)) of the Illinois Compiled Statutes 1992, as amended."

At trial, correctional officers Cruz and Shury testified that they heard the defendant threaten "to burn the place down" and thereafter saw smoke coming from defendant's jail cell. After the door to that cell was opened, they saw the defendant's mattress, sheets, blankets, toilet paper, and other paper piled on the floor near the door and in flames. Lieutenant Howell also testified that he viewed the defendant's cell and saw black ash on the walls and ceiling, water on the floor, and destruction of the mattress and blankets. Based upon this testimony, the trial judge found the defendant not guilty of attempted aggravated arson but guilty of misdemeanor criminal damage to property.

■ Initially we note that the mittimus incorrectly states the defendant was found guilty of criminal damage to State property less than $500 under section 21—4(1)(a) of the Criminal Code of 1961 (the Criminal Code) (720 ILCS 5/21—4(1)(a) (West 1994)). It is clear from the record that the trial court did not find the defendant guilty of criminal damage to State property as that offense is a felony (see 720 ILCS 5/21—4(1) (West 1994)) and since the court specifically stated that the defendant was guilty of misdemeanor criminal damage to property which could only mean guilt under section 21—1 and not under section 21—4(1)(a) of the Criminal Code. The State concedes this error and asks this court, pursuant to Supreme Court Rule 615(b) (155 Ill. 2d R. 615(b)), to correct the mittimus to reflect defendant's conviction of criminal damage to property under section 21—1(1)(b) of the Criminal Code. The defendant argues that the trial court did not specifically find him guilty of subsection (1)(b) of section 21—1, the criminal damage to property statute. He argues that since the trial court did not identify which of the seven subsections within section 21—1 he had violated, this court should reverse the criminal damage to property conviction rather than order correction of the mittimus.

In support of his argument seeking reversal, the defendant relies on *People v. Nelson*, 210 Ill. App. 3d 977, 569 N.E.2d 1197 (1991). In *Nelson*, the defendant was charged with driving under the influence of alcohol, a violation of section 11—504(a)(2) of the Illinois Vehicle Code (the Vehicle Code) (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501(a)(2)),

but the uniform traffic ticket erroneously cited section 11—501(a)(1) of the Vehicle Code. Section 11—501(a)(1) prohibited driving with an alcoholic concentration of 0.10 or more. Ill. Rev. Stat. 1989, ch. 95½, par. 11—501(a)(1). The defendant never challenged the sufficiency of the traffic ticket. At trial the State presented evidence to prove driving under the influence, and the defendant attempted to disprove that charge. The discrepancy in the traffic ticket was first noticed by the trial court after the parties' closing arguments. The court's order found the defendant guilty of driving under the influence of alcohol, citing section 11—501(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501(a)). It did not specify which of the four separate and distinct prohibited acts within section 11—501(a) the defendant was guilty of violating.

On appeal, the appellate court reversed defendant's conviction, finding that the defendant had been found guilty of a crime that did not exist. The court stated that "section 11—501(a) does not state an offense until it is combined with one of the four subsections." *Nelson*, 210 Ill. App. 3d at 984, 569 N.E.2d at 1202. In determining that reversal was warranted, the appellate court found, among other things, that the trial court was confused as to its ability to convict the defendant of violating section 11—501(a)(2), driving under the influence of alcohol, because the defendant had been erroneously charged with driving under the influence of an alcoholic beverage but in violation of section 11—501(a)(1) rather than section 11—501(a)(2). The appellate court believed that the discrepancy in the traffic ticket caused "the trial court to err in determining of which offense defendant was convicted" such that the trial court did not convict the defendant of any of the offenses set forth in section 11—501(a) of the Code. *Nelson*, 210 Ill. App. 3d at 984, 569 N.E.2d at 1201-02.

We believe that *Nelson* is distinguishable upon its unique facts and does not compel reversal in the instant case. In *Nelson*, the charging instrument, the traffic ticket, was flawed.[1] Based upon the discrep-

---

[1]In *Nelson*, 210 Ill. App. 3d 977, 569 N.E.2d 1197, the defendant also challenged the sufficiency of the uniform traffic ticket, an argument made for the first time on appeal. The appellate court, in reliance on *People v. Tammen*, 40 Ill. 2d 76, 237 N.E.2d 517 (1968), and *People v. Askeland*, 166 Ill. App. 3d 78, 519 N.E.2d 494 (1988), rejected defendant's argument, finding that the defendant had not raised that objection prior to trial nor had he filed a request for a bill of particulars as he was entitled to do under section 111—6 of the Code of Criminal Procedure (Ill. Rev. Stat. 1989, ch. 38, par. 111—6). The court also found that the traffic ticket "was sufficient to inform defendant of the nature and cause of the accusation." *Nelson*, 210 Ill. App. 3d at 981-82, 569 N.E.2d at 1200.

ancy in the ticket, the trial court believed it could not find the defendant guilty of driving under the influence of alcohol in violation of section 11—501(a)(2), the only offense for which evidence was presented. Under the reasoning of the appellate court, since the trial court in its own confusion rejected section 11—501(a)(2) as the proper predicate for defendant's guilt when the matter was before it, that section could not be resurrected as the basis for the trial court's finding when the matter was reached on review.

In the instant case, there is no reason to attribute the trial court's failure to specify the applicable statutory provision to a mistaken belief by the court that it was without authority to find the defendant guilty of an offense not charged in the information. There is no question that the court believed it could find the defendant guilty of the included offense of criminal damage to property and there is no question that the court in fact found the defendant guilty of that included offense. Here, unlike in *Nelson*, there were no defects in the charging instrument. While the defendant was convicted of an offense not specified in the information, that conviction was proper since, as will be discussed in greater detail below, the offense of which the defendant was convicted was a lesser included offense of the specific offense which was correctly identified in the charging instrument. See *People v. Novak*, 163 Ill. 2d 93, 105, 643 N.E.2d 762, 769 (1994) ("[n]o person can be convicted of an offense that he or she has not been charged with committing" unless the offense is a lesser included offense of that which has been charged). The *Nelson* court acknowledged that a defendant could be convicted of an included offense for which he or she had not been charged but stated that the two offenses that were the subject of that appeal were separate statutory offenses, neither of which was an included offense of the other. *Nelson*, 210 Ill. App. 3d at 983, 569 N.E.2d at 1201.

■ Moreover, under these facts, where the court's finding of guilt is conclusive, the court's failure to specify the statutory provision that has been violated does not warrant reversal. Generally, the trial court is not required to make a specific finding identifying the subsection of the offense that has been violated. Section 115—3(b) of the Code of Criminal Procedure provides that "[u]pon conclusion of the trial the court shall enter a general finding." 725 ILCS 5/115—3(b) (West 1994). Similarly, where trial is by jury, the jury is required to return a general verdict. 725 ILCS 5/115—4(j) (West 1994). Explaining the effect of a general verdict returned by a jury, our supreme court stated in *People v. Rodriguez*, 169 Ill. 2d 183, 661 N.E.2d 305 (1996), as follows:

"The controlling principles are quite settled. A general verdict of

guilty is presumed to be based on any good count in the indictment to which the proof is applicable. [Citation.] Also, where an indictment contains several counts that arise out of a single transaction, and a general verdict of guilty is returned, the effect is that the defendant is guilty as charged in each count to which the proof is applicable." *Rodriguez*, 169 Ill. 2d at 189-90, 661 N.E.2d at 308.

In *Rodriguez*, the defendant was charged with eight counts of aggravated criminal sexual assault, one count of home invasion, and two counts of intimidation. Four of the aggravated criminal sexual assault counts alleged that the defendant displayed or threatened to use a dangerous weapon (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(a)(1)), and four counts alleged that the defendant committed the assault during a home invasion (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(a)(4)). The jury returned three general verdicts of guilty, one each for aggravated criminal sexual assault, home invasion and intimidation. The trial court sentenced the defendant to consecutive terms of imprisonment for each offense and the defendant appealed, contending that he could not be found guilty of home invasion since that offense was a lesser included offense of aggravated criminal sexual assault. The appellate court agreed and vacated the home invasion conviction. The supreme court reversed the appellate court, finding that the appellate court mistakenly presumed the jury found the defendant guilty of aggravated criminal sexual assault based on defendant's commission of the assault during the home invasion (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(a)(4)) rather than defendant's commission of the assault while displaying or threatening to use a dangerous weapon (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(a)(1)). Based upon the general verdict, the supreme court found that it could be assumed that the defendant was convicted of aggravated criminal sexual assault based on the more serious offense of displaying or threatening to use a dangerous weapon such that home invasion would not be a lesser included offense requiring vacatur of that conviction. See also *People v. Thompkins*, 121 Ill. 2d 401, 455-56, 521 N.E.2d 38, 62 (1988), wherein court held that general verdict on three murder counts of intentional, knowing and felony murder raised presumption that jury found defendant guilty of intentional murder, stating:

" '[W]here an indictment contains several counts arising out of a single transaction, and a general verdict is returned the effect is that the defendant is guilty as charged in each count, and if the punishment imposed is one which is authorized to be inflicted for the offense charged, the verdict must be sustained.' (*People v. Lymore* (1962), 25 Ill. 2d 305, 308.)"

Accord *People v. Scott*, 148 Ill. 2d 479, 562, 594 N.E.2d 217, 253 (1992).

Here, the trial court entered a general finding of guilt as to criminal damage to property. Since a general finding has the effect of finding the defendant guilty of any charged offense and any lesser included offense of that charged offense to which the proof is applicable, the general finding here had the effect of finding the defendant guilty of any of the several acts enumerated in the criminal damage to property statute considered to be lesser included offenses of the aggravated arson charge to which the proof is applicable. See *Rodriguez*, 169 Ill. 2d at 189-90, 661 N.E.2d at 308; *Scott*, 148 Ill. 2d at 562, 594 N.E.2d at 253; *Thompkins*, 121 Ill. 2d at 455-56, 521 N.E.2d at 62.

■ Section 2—9 of the Criminal Code defines an included offense as an offense that "[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." 720 ILCS 5/2—9(a) (West 1994). Under the charging instrument analysis, preferred by our supreme court (see *Novak*, 163 Ill. 2d at 112, 643 N.E.2d at 772), the charging instrument is examined to determine whether a particular offense is a lesser included offense of another. "[A]n offense is deemed to be a lesser included offense if it is described by the charging instrument" (*Novak*, 163 Ill. 2d at 107, 643 N.E.2d at 769, citing *People v. Wys*, 103 Ill. App. 3d 273, 276, 431 N.E.2d 38 (1982)) and if the charging instrument at least "set[s] out the main outline of the lesser offense" (*People v. Bryant*, 113 Ill. 2d 497, 505, 499 N.E.2d 413, 416 (1986)).

■ ■ We believe the information in the instant case provided a sufficiently broad foundation to outline the offense of criminal damage to property as provided in subsections (1)(a), (1)(b) and (1)(c) of the criminal damage to property statute. Those provisions state that a person commits the offense of criminal damage to property if he:

"(a) knowingly damages any property of another without his consent; or

(b) recklessly by means of fire or explosive damages property of another; or

(c) knowingly starts a fire on the land of another without his consent." 720 ILCS 5/21—1(1) (West 1994).

The information here stated that the defendant took a substantial step toward the commission of the offense of aggravated arson in that "by means of fire [he] ignited his mattress in his jail cell located in Division 9 of the Cook County Jail," knowing that one or more persons were present in the jail building. See 720 ILCS 5/8—4, 20—1.1(a), 20—1 (West 1994). It specifically charged the defendant with intent to commit aggravated arson by using fire to ignite his mattress in the Cook County jail building. The physical act of using fire to damage the

mattress is similarly encompassed in subsections (1)(b) and (1)(c) of the criminal damage to property statute in that both require damage by the use of fire. Subsection (1)(a) would also be implicated where the property is damaged by fire, although in that subsection the cause of the damage need not be fire related. See *People v. Parsons*, 284 Ill. App. 3d 1049, 1059, 673 N.E.2d 347, 354 (1996) (sections 21—1(1)(a), (b) and (c) can be lesser-included offenses of aggravated arson); *People v. Bradley*, 256 Ill. App. 3d 514, 628 N.E.2d 257 (1993) (section 21—1(1)(b) is lesser-included offense of aggravated arson). Similarly, the type of damage alleged in the information, damage to a building, which is required for aggravated arson (720 ILCS 5/20—1.1 (West 1994)), would implicate subsections (1)(a), (1)(b) and (1)(c) of the criminal damage to property statute because damage to a building could denote damage to the land upon which the building sits (720 ILCS 5/21—1(1)(c) (West 1994)) and/or property within that building (720 ILCS 5/21—1(1)(a), (1)(b) (West 1994)). While the information did not charge that the defendant acted without the property owner's consent, as required by subsections (1)(a) and (1)(c) of the criminal damage to property statute, that element is implied from the fact that the building and property were state owned and being used for state purposes. An inmate confined in a jail would never have the consent of the state to initiate a fire on the jail premises. See *Parsons*, 284 Ill. App. 3d at 1059, 673 N.E.2d at 354 (lack of consent implied from charging instrument).

In addition to alleging the prerequisite physical act and damage, the mental state of knowledge alleged in the information to support the attempted aggravated arson charge is the same mental state required in subsections (1)(a) and (1)(c) of the criminal damage to property statute. Compare 720 ILCS 5/21—1(1)(a), (1)(c) (West 1994) with 720 ILCS 5/20—1.1 (West 1994). Subsection (1)(b) of that statute involves a different mental state, recklessness, but that distinction is not fatal since by definition an included offense may be an offense which requires proof of a less culpable mental state. 720 ILCS 5/2—9(a) (West 1994). See *Parsons*, 284 Ill. App. 3d 1049, 673 N.E.2d 347; *Bradley*, 256 Ill. App. 3d 514, 628 N.E.2d 257 (subsection (1)(b) is a lesser-included offense of aggravated arson).[2]

---

[2]The defendant has cited two cases, *People v. Ryan*, 97 Ill. App. 3d 1071, 424 N.E.2d 20 (1981), and *People v. Lockwood*, 240 Ill. App. 3d 137, 608 N.E.2d 132 (1992), which held that section 21—1(1)(b) of the Criminal Code (720 ILCS 5/21—1(1)(b) (West 1994)) is not a lesser-included offense of aggravated arson. This holding was specifically rejected in *People v. Bradley*, 256 Ill. App. 3d 514, 517, 628 N.E.2d 257, 259-60 (1993).

■ Although the information in the instant case provided a sufficiently broad foundation to outline the commission of the three offenses identified in subsections (1)(a), (1)(b) and (1)(c) of the criminal damage to property statute, we find that the proofs as presented at trial could only convict the defendant of violating subsection (1)(a). See 720 ILCS 5/21—1(1)(a) (West 1994) (a person commits criminal damage to property if he "knowingly damages any property of another without his consent"). Contrary to the State's contention, the defendant could not be found guilty of violating subsection (1)(b) because there was no evidence presented at trial that the defendant acted recklessly when he ignited the mattress. There was no evidence of carelessness on the part of the defendant. The defendant denied setting the fire. The State presented evidence showing that the defendant intentionally and knowingly set the fire. It showed that immediately preceding the fire the defendant threatened to "burn the [jail] down." It also showed that the fire originated in the area of the defendant's cell where the mattress, bedding, toilet paper and other paper had been piled together. This evidence suggests only that the fire was intentionally and knowingly set. See *Ryan*, 97 Ill. App. 3d 1071, 424 N.E.2d 20 (no evidence of recklessness to entitle defendant charged with aggravated arson to jury instruction on criminal damage to property under subsection (1)(b)). *Cf. Bradley*, 256 Ill. App. 3d 514, 628 N.E.2d 257 (defendant entitled to instruction on lesser-included offense of criminal damage to property under subsection (1)(b) where there was slight evidence of recklessness based on defendant's recanted testimony that she may have dropped a cigarette that may have started the fire). In addition, the evidence could not support a conviction under subsection (1)(c), starting a fire on the land of another, since it showed only that the mattress, bedding and paper, piled together, were set afire.

In view of our holding that the information and evidence at trial support only a finding of guilt on the offense of criminal damage to property under subsection (1)(a) of that statute, we order that the mittimus be corrected to reflect that conviction. 155 Ill. 2d R. 615(b)(1); see *People v. Brown*, 255 Ill. App. 3d 425, 438-39, 627 N.E.2d 340, 348 (1993); *People v. Mitchell*, 234 Ill. App. 3d 912, 921, 601 N.E.2d 916, 922 (1992). The finding of guilt of criminal damage to State property less than $500 under section 21—4(1)(a) of the Criminal Code shall be vacated.

The defendant next contends that his convictions for aggravated battery of Officers Cruz and Shury must be reversed because he was not proven guilty of those offenses beyond a reasonable doubt. In the

context of this argument, the defendant concedes that Officers Cruz and Shury and Lieutenant Howell testified that a scuffle ensued between them and the defendant when they opened defendant's cell door and removed him from that cell. He concedes that Officer Cruz testified that his right hand was swollen and that Shury testified that his left hand was swollen. The defendant argues that Cruz, Shury and Howell should not have been believed because their testimony regarding injuries sustained by the defendant after he was examined by jail paramedic Rosol was impeached. He contends that the officers' testimony was tainted and unreliable because the evidence showed that they beat him in violation of his constitutional rights.

■ On review, a criminal conviction will not be set aside on the grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. *E.g., People v. Stanciel*, 153 Ill. 2d 218, 235, 606 N.E.2d 1201, 1210 (1992); *People v. Tye*, 141 Ill. 2d 1, 13, 565 N.E.2d 931, 937 (1990). The relevant question, after viewing the evidence in a light most favorable to the prosecution, is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Dennis*, 181 Ill. 2d 87, 95, 692 N.E.2d 325, 330 (1998); *People v. Kolzow*, 301 Ill. App. 3d 1, 5 (1998). In making its reasonable doubt determination, the trier of fact is charged with weighing the evidence, determining the credibility of the witnesses and resolving any conflicts in the evidence. *People v. Slim*, 127 Ill. 2d 302, 307, 537 N.E.2d 317, 319 (1989); *People v. Montgomery*, 302 Ill. App. 3d 1, 14 (1998).

■ A person commits aggravated battery if in committing a battery he or she knows the individual harmed to be a correctional officer. 720 ILCS 5/12—4(b)(6) (West 1994). A battery is committed if a person intentionally or knowingly and without justification causes bodily harm to an individual or makes physical contact of an insulting or provoking nature with an individual. 720 ILCS 5/12—3(a) (West 1994). Bodily harm occurs when the individual suffers physical pain or damage to his or her body such as lacerations, bruises, or abrasions. The damage can be temporary or permanent. *People v. Mays*, 91 Ill. 2d 251, 256, 437 N.E.2d 633 (1982).

■ Here, as discussed above, the defendant concedes that Officers Cruz and Shury testified to having received injuries as a result of a scuffle with the defendant. He argues, however, that their testimony should not be believed because their testimony was impeached. We disagree. The trial court observed the demeanor of the witnesses at trial and based upon that observation determined that the officers' testimony regarding the charges of aggravated battery was credible.

The trial court was in a superior position to make that determination, and this court cannot substitute its judgment for that court since we cannot say that the evidence was so improbable and unsatisfactory so as to raise a reasonable doubt of defendant's guilt. See *People v. Dunskus*, 282 Ill. App. 3d 912, 918, 668 N.E.2d 1138, 1143 (1996); *People v. Bailey*, 265 Ill. App. 3d 262, 271, 638 N.E.2d 192, 198 (1994).

At trial, Cruz, Shury and Howell testified that Cruz, Shury and the defendant suffered injuries as a result of an altercation that occurred in defendant's jail cell. Paramedic Rosol confirmed that at least one of the officers and the defendant had been injured and that he had rendered some medical assistance to them. The defendant also testified that he sustained injuries in his jail cell prior to being taken to Rosol for medical treatment. The testimony of Rosol and the defendant does not conflict with, contradict nor disprove the officer's testimony or the trial court's finding that the officers sustained injuries during a struggle that occurred with the defendant while the defendant was being held in his jail cell. The testimony of Rosol and the defendant does suggest that the defendant sustained additional injuries after the jail cell incident and after the defendant obtained medical treatment from Rosol. However, the defendant did not identify the perpetrators of those injuries and did not attribute his later injuries to Officers Cruz and Shury. Consequently, while the defendant presented evidence of possible brutality at the hands of some corrections officers, that evidence did not vitiate the testimony at trial that the defendant committed aggravated battery upon Officers Cruz and Shury during the jail cell altercation. Thus, the defendant's reasonable doubt argument must fail.

As his final argument on appeal, the defendant argues that the extended-term sentence of 10 years' imprisonment to be served consecutively with defendant's 55 years' sentence on a prior unrelated offense was excessive in view of the minor injuries sustained by Officers Cruz and Shury.

The State argues that the defendant waived this argument by not raising it in a written postsentencing motion. The defendant concedes that he did not file a postsentencing motion but contends that he failed to do so because neither the court nor the State told him that he was required to file such a motion. The State responds that no such duty of disclosure exists.

We would agree with the State that there is no duty upon the court or the prosecutor to advise the defendant of the requirement to file a posttrial or postsentencing motion to preserve errors for appeal. While the trial court has such a duty when entering judgment on a defendant's plea of guilty (145 Ill. 2d R. 605(b)), no such duty exists

when judgment and sentence are entered after the defendant has pled not guilty. In the latter case, the court need only advise the defendant of his rights regarding the taking of an appeal. 145 Ill. 2d R. 605(a).

"A defendant's challenge to the correctness of a sentence *** shall be made by a written motion filed within 30 days following the imposition of sentence." 730 ILCS 5/5—8—1(c) (West 1994). The requirement that a written motion be filed with the trial court within 30 days of sentencing is mandatory; and the failure to file such a motion results in waiver. *People v. Reed*, 177 Ill. 2d 389, 395, 686 N.E.2d 584, 587 (1997). However, in accordance with Supreme Court Rule 615, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 155 Ill. 2d R. 615(a). The plain error rule is applicable where consecutive or extended sentences are imposed without legal justification. *People v. Reed*, 282 Ill. App. 3d 278, 281, 668 N.E.2d 51, 53 (1996), *aff'd*, 177 Ill. 2d 389, 686 N.E.2d 584 (1997); *People v. McCleary*, 278 Ill. App. 3d 498, 501, 663 N.E.2d 22, 24-25 (1996), citing *People v. Askew*, 273 Ill. App. 3d 798, 652 N.E.2d 1041 (1995) (extended-term sentences as plain error); *People v. Moncrief*, 276 Ill. App. 3d 533, 535, 659 N.E.2d 106, 108 (1995) (consecutive sentences as plain error). Here, we will address defendant's extended-term sentence argument under the plain error exception to the waiver rule.

The commission of the offense of aggravated battery is a Class 3 felony for which the sentence shall not be less than two years' and no more than five years' imprisonment. 720 ILCS 5/12—4(e) (West 1994); 730 ILCS 5/5—8—1(a)(6) (West 1994). If factors in aggravation set forth in section 5—5—3.2(b) of the Unified Code of Corrections (730 ILCS 5/5—5—3.2(b) (West 1994)) exist, a sentence in excess of the maximum sentence authorized may be imposed by the judge. The extended sentence for a Class 3 felony is not less than 5 years and not more than 10 years. 730 ILCS 5/5—8—2(a)(5) (West 1994). One factor in aggravation allowing for an extended sentence is the prior conviction of a felony within 10 years of the conviction for which the defendant is being sentenced. 730 ILCS 5/5—5—3.2(b)(1) (West 1994). In addition, the sentence for a felony committed while in pretrial detention in a county jail facility for a separate felony shall run consecutively to the sentence for that separate felony. 730 ILCS 5/5—8—4(h) (West 1994).

A trial court is vested with wide discretion in imposing sentence (*People v. Streit*, 142 Ill. 2d 13, 18-19, 566 N.E.2d 1351, 1353 (1991); *People v. O'Neal*, 125 Ill. 2d 291, 298, 531 N.E.2d 366, 368 (1988)), and if the sentence is within the statutory limits, a reviewing court will not reverse absent an abuse of discretion (*People v. Cabrera*, 116 Ill. 2d

474, 493-94, 508 N.E.2d 708, 716 (1987)). A trial judge is in a better position than a reviewing court to determine the punishment to be imposed because the trial court has had an opportunity to consider such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age. *Streit*, 142 Ill. 2d at 19, 566 N.E.2d at 1353; *People v. Perruquet*, 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884 (1977); *Montgomery*, 302 Ill. App. 3d at 16. A court of review will not reverse a trial court's sentencing decision simply because it might have balanced the appropriate factors differently. *Streit*, 142 Ill. 2d at 19, 566 N.E.2d at 1353; *People v. Cox*, 82 Ill. 2d 268, 280, 412 N.E.2d 541, 547 (1980).

Here, there is no question that the defendant was properly sentenced to an extended-term sentence with respect to the aggravated battery felony convictions because he had previously been convicted of a greater felony, aggravated vehicular hijacking, within 10 years of the battery convictions. See 720 ILCS 5/5—5—3.2(b)(1) (West 1994). The defendant contends, however, that he should not have been sentenced to the maximum extended term of 10 years because the injuries sustained by the officers as a result of the offense were minimal. We disagree.

While a defendant's conduct in causing serious harm is a factor to be considered in sentencing (730 ILCS 5/5—5—3.2(a)(1) (West 1994)), the absence of that factor would not prevent the court from imposing a maximum sentence term where other factors in aggravation exist. Here, the court was free to consider the defendant's history of prior delinquency and criminal activity. See 730 ILCS 5/5—5—3.2(a)(3) (West 1994). In that regard the State presented evidence that the defendant was convicted of armed robbery in 1991 and, as a juvenile, was the subject of five delinquency findings. In addition the court was free to consider evidence reflecting on the defendant's general moral character (see *Streit*, 142 Ill. 2d at 19, 566 N.E.2d at 1353; *Perruquet*, 68 Ill. 2d at 154, 368 N.E.2d at 884), including evidence regarding the defendant's misbehavior and propensity toward improper conduct while incarcerated. Evidence in that regard showed that the defendant had been placed in the special incarceration unit of Cook County jail because he had damaged the pump room at the jail by tearing pipe from the radiator, breaking glass block windows and knocking out light fixtures. The defendant's temporary presence in the pump room was necessitated by the fact that he had been inciting prisoners during a prison-ordered search of the jail. We cannot say that, in light of these factors, the court abused its discretion in sentencing the defendant to the maximum 10-year term of imprisonment. See *People v. Crete*, 113 Ill. 2d 156, 158, 497 N.E.2d 751, 755 (1986) (imposition of 10-year extended term based upon defendant's prior criminal conduct).

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and vacated in part.

Affirmed in part; vacated in part.

McNULTY and COUSINS, JJ., concur.