# In the
# United States Court of Appeals
## For the Seventh Circuit

---

No. 05-1296

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEVIN C. JORDAN,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 03 CR 254—**William C. Griesbach**, *Judge.*

---

ARGUED SEPTEMBER 14, 2005—DECIDED JANUARY 13, 2006

---

Before EASTERBROOK, ROVNER, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Kevin Jordan, age 42, carried on an illicit relationship with a 15-year-old Wisconsin girl he seduced over the Internet and persuaded to live with him in Ohio. He was eventually caught and pleaded guilty to two federal crimes: traveling in interstate commerce to engage in a sexual act with a juvenile and interstate stalking. Although the applicable guidelines sentencing range was 110-137 months' imprisonment, the district court imposed the maximum sentence of 240 months.

Jordan argues on appeal that the sentence is unreasonable. He also argues that application of the Supreme Court's remedial opinion in *United States v. Booker,*

125 S. Ct. 738 (2005), making the sentencing guidelines advisory rather than mandatory, exposed him to a longer sentence in violation of ex post facto principles implicit in due process. We rejected the latter argument in *United States v. Jamison*, 416 F.3d 538, 539 (7th Cir. 2005), and see no reason to revisit that holding here. We affirm Jordan's sentence as reasonable and adequately explained by the district court.

## I. Background

Kevin Jordan, age 42 when he committed his crimes, trolled Internet chat rooms seeking teenage girls with whom he could establish sexual relationships. One of the teenagers Jordan contacted online was K.W., a 15-year-old girl with bipolar disorder who lived with her parents and siblings in Green Bay, Wisconsin. Jordan arranged to meet K.W. in person, and in October 2002 drove to Wisconsin from his home in Mount Vernon, Ohio, for the meeting. On the morning of October 14, 2002, K.W.'s mother dropped her off at school; K.W. then disappeared for six months. Jordan picked her up in Green Bay and drove her first to Milwaukee, where they had sexual relations in a hotel, and then to Mount Vernon, where she lived with him and they carried on a sexual relationship. Jordan also took pornographic pictures of K.W. and stored them on his computer. During the six months K.W. spent with Jordan, her family had no contact with her and no knowledge of her whereabouts.

In April 2003 K.W. decided to move back to her family in Wisconsin, so she arranged for her aunt to pick her up in Ohio and return her home. She resumed living with her family in Green Bay but kept in touch with Jordan via the Internet, telephone, and U.S. mail. In June 2003 she moved in with her aunt and uncle in Peshtigo, Wisconsin, and attempted to cease all contact with Jordan. Yet Jordan

persisted in his attempts to communicate with K.W. and also with her aunt. He sent them both letters and e-mails, and during October 2003, he called their house over 100 times. During these calls, he would typically play music or breathe into the phone, but on one occasion he told K.W.'s aunt, "Bitch, I will get you." On October 23, 2003, using the screen name "Icdeadppl" [I see dead people], he e-mailed K.W.'s aunt the following message: "This . . . world will end soon and you and ppl [people] like you will end too." K.W.'s aunt took this as a threat. In late October Jordan left Mount Vernon and drove to Wisconsin. Between November 3 and 5, 2003, K.W.'s uncle saw Jordan driving past his home in Peshtigo on at least five occasions.

Before arriving in Peshtigo, however, Jordan drove to Davenport, Iowa, to see another teenage girl whom he had met on the Internet. K.M. was 13 years old when Jordan first contacted her online in April 2002 and 14 years old when Jordan visited her in Davenport during late October and early November 2003. Jordan had previously sent K.M. cards, letters, and flowers. Forensic review of Jordan's computer revealed extensive e-mail correspondence between them, including e-mails in which K.M. told Jordan of her affection and love for him. Jordan's computer also contained several photographs of K.M. in a cheerleading uniform, one of her in a bikini, and one in which K.M. had her shirt pulled up, exposing her breasts. K.M. later told authorities that her contact with Jordan did not escalate into a sexual relationship.

Jordan was finally arrested on November 6, 2003, after passing out at a shopping mall near Peshtigo. A handgun was found in the hotel room where he was staying. Upon questioning, Jordan acknowledged a previous felony conviction in Ohio for sexually abusing his daughter at least twice monthly when she was between the ages of three and five years old. Jordan said he did not think his conduct was

wrong because he believed his daughter enjoyed it.[1] Jordan also refused to acknowledge that his relationship with K.W. was wrong, saying that he disagreed with "man's law" that made it a crime for an adult to have sex with an adolescent girl.

Jordan was charged in a four-count indictment and eventually pleaded guilty to two crimes: traveling in interstate commerce for the purpose of engaging in a sexual act with a person under the age of 18, contrary to 18 U.S.C. § 2423(b) (Count 1), and traveling in interstate commerce with intent to kill, injure, harass, or intimidate another person, contrary to 18 U.S.C. § 2261A(1) (Count 3). While awaiting sentencing, Jordan wrote to his 14-year-old son and asked him to try to contact a man from Ecuador whom he had met in jail. Jordan told his son that the Ecuadorian had told him that in his country the government would have no problem with his relationship with K.W. Jordan also said in the letter that he still loved K.W. and suggested that he and K.W. could live together in Ecuador. Jordan said his dream was to be with K.W. forever.

At sentencing the government presented evidence showing that in addition to the child pornography Jordan created with K.W., he also had hundreds of other images of child pornography on his computer, most involving prepubescent children engaging in sexual acts with adults or other children. The government's evidence also showed that Jordan had communicated with at least 14 teenage girls via online chat rooms and e-mail messages. Jordan focused his online efforts on chat rooms that catered to teens or that

---

[1] At Jordan's sentencing hearing Special Agent Eric Szatkowski of the Wisconsin Department of Justice, Division of Criminal Investigation, testified about what Jordan told him following his arrest. The district court credited Szatkowski's testimony, and Jordan does not challenge the district court's factual findings on appeal.

had sexually suggestive names. Two of the girls Jordan contacted specifically identified themselves as being 14 and 15 years old. Jordan typically initiated his communications with each of the girls with the following standard message:

> Hi, I just saw you in the sex with you know group. Thought I'd write and see what happens. Do you happen to talk with older guys? I'll let you know that I'm 43. I do have a profile at Yahoo. I live in Ohio. I do prefer younger girls. You are so much easier to get along with and relate to. I have been in a relationship with a girl MUCH younger than me. I'll also tell you that we met through the Internet and met in person soon after. Where are you from?

Special Agent Eric Szatkowski, an experienced investigator of online child exploitation, testified that Jordan referred to his previous relationship with a much younger girl as a grooming technique designed to lower a potential victim's defenses by making the intergenerational relationship seem normal and acceptable.

The record before the district court also included Jordan's mental health competency evaluation, which confirmed that Jordan continued to believe there was nothing wrong with "an adult male having a sexual relationship with a teenage female" and that "the laws against this activity were completely unnecessary and unfair." Criminal records from Ohio showed that Jordan was ordered to participate in sex offender treatment while on probation for molesting his daughter. The records indicated that he completed Phase I of the program and entered Phase II, though it is unclear whether he finished Phase II. The mental health evaluation reflects that Jordan spoke to evaluators "in sarcastic and disparaging terms about his past experiences in psychotherapy." The report concludes with a diagnosis of pedophilia.

Jordan's advisory sentencing guidelines range was 110-137 months' imprisonment. The district court instead

imposed the maximum term of 240 months' imprisonment: 180 months on Count 1 and 60 months consecutive on Count 3. Jordan appeals his sentence.

## II. Discussion

We review sentences for reasonableness based on the sentencing factors in 18 U.S.C. § 3553(a). *Booker*, 125 S. Ct. at 765-66. A sentence within a properly calculated advisory guidelines range is entitled to a rebuttable presumption of reasonableness. *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). Sentences that vary from the advisory guidelines range are reasonable as long as the district judge offers adequate justification consistent with the sentencing factors in § 3553(a). *United States v. Johnson*, 427 F.3d 423, 426-27 (7th Cir. 2005) (citing *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005)). A district judge need not "'rehearse on the record all of the considerations that 18 U.S.C. § 3553(a) lists; it is enough to calculate the [guidelines] range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less.'" *Dean*, 414 F.3d at 729 (quoting *United States v. George*, 403 F.3d 470, 472-73 (7th Cir. 2005)). The farther a sentence varies from the advisory range, the more compelling the judge's reasons must be. *Dean*, 414 F.3d at 729.

Here, the district court imposed the maximum sentence on each count and ordered the terms to run consecutively. This sentence exceeded the top of the guidelines range by 103 months. By any measure, the sentence represents a significant upward variance from the advisory guidelines range, so the district court's reasons must be quite compelling to satisfy reasonableness review. They are. The district judge described on the record and at length the many facts and circumstances of Jordan's case that were pertinent to his evaluation of § 3553(a) factors, with particular emphasis on the severity of Jordan's offenses and his risk of recidivism. The judge explained in

considerable detail why the 240-month sentence was warranted. We count at least ten specific areas of concern to the district court:

1. Jordan's history of "trolling" the Internet to solicit adolescent girls for sex;

2. The prolonged duration and pronounced manipulation that characterized Jordan's six-month sexual relationship with 15-year-old K.W.;

3. Jordan's prior and repeated sexual abuse of his own daughter when she was three to five years old;

4. Jordan's professed disagreement with "man's law" that prohibited adult men from having sex with teenage girls, and his belief that there was nothing wrong with his sexual activity with his daughter;

5. Jordan's diagnosis of pedophilia and the ineffectiveness of previous sex offender therapy;

6. The particularly difficult trauma suffered by the victim's family because of her lengthy disappearance;

7. Jordan's threats of violence against the victim's family;

8. Jordan's creation and possession of child pornography (crimes for which he was not separately charged);

9. Jordan's suggestion to his son that when he got out of jail, he could reunite with K.W. and live with her in Ecuador; and

10. The fact that Jordan brought a gun with him when he came to Wisconsin to stalk K.W. and her family.

We have no difficulty affirming the district judge's conclusion that Jordan's conduct and character called for the maximum sentence in light of the sentencing criteria specified in § 3553(a). The statute directs the sentencing court to consider "the nature and circumstances of the

offense" and "the need for the sentence imposed . . . to reflect the seriousness of the offense . . . and to provide just punishment." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A). Jordan's offenses can only be considered extremely serious, aggravated by the following circumstances identified by the district court: Jordan's online seduction and subsequent manipulation of K.W., a vulnerable 15-year-old; the extended duration of his six-month sexual relationship with her; the heightened trauma suffered by her family due to her prolonged disappearance; Jordan's creation of pornography with her; and his repeated threats of violence and possession of gun while stalking her family.

The statute also directs the court to consider "the history and characteristics of the defendant" and "the need for the sentence imposed . . . to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C). Jordan plainly poses a heightened risk of recidivism based on the following facts noted by the district court: his "trolling" of the Internet looking for teenage girls for sex and his predatory contact with girls other than the present victim; his previous conviction for molesting his prepubescent daughter over a two-year period; his expressed disagreement with "man's law" that prohibits adult men from having sexual relationships with adolescent girls; his diagnosis of pedophilia and the ineffectiveness of prior sex offender treatment; his possession of child pornography; and his comments to his son about wanting to resume his relationship with K.W. and move with her to Ecuador.

Finally (as is pertinent here), the statute specifies that the court may consider the need for general deterrence and respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A), (a)(2)(B) ("[t]he court . . . shall consider . . . the need for the sentence imposed . . . to promote respect for the law. . . [and] . . . to afford adequate deterrence to criminal conduct"). The judge did so: "I think a severe sentence is

necessary to send a very strong message that this conduct is outrageous, that this conduct is wrong, that this conduct cannot be tolerated in a civilized society that cares for its children." Jordan's 240-month sentence was adequately explained by the district court, was sufficiently linked to appropriate § 3553(a) sentencing factors, and is reasonable.

Jordan argues that his sentence is unreasonable because the Sentencing Commission, prodded by Congress, has repeatedly amended the guidelines to boost sentence ranges for crimes involving sexual abuse and exploitation of minors. *See generally* UNITED STATES SENTENCING COMMISSION, *Fifteen Years of Guidelines Sentencing* (Nov. 2004), ch. 2, sec. D, pt. 6, http://www.ussc.gov/15_year/ 15year.htm. He suggests that where the guidelines ranges have been periodically increased, any sentence above the range should be subjected to some form of heightened reasonableness review. This argument conflicts with *Booker* itself and with post-*Booker* case law in this circuit.

The remedial opinion in *Booker* contemplated that the Sentencing Commission would continue to collect data and modify the guidelines, even though they are no longer mandatory. *Booker*, 125 S. Ct. at 766. We have held that a sentence within a properly calculated guidelines range is presumed reasonable, *Mykytiuk*, 415 F.3d at 608, but there is no presumption of *unreasonableness* that attaches to a sentence that varies from the range. A sentence outside the range need only be adequately explained and consistent with § 3553(a) factors. *Dean*, 414 F.3d at 729; *Johnson*, 427 F.3d at 426-27. A sentence that exceeds the applicable advisory guidelines range is not suspect—and certainly not categorically unreasonable—merely because the ranges have been amended upward over time.

Jordan makes two additional arguments we need not fully engage here. First, he says he was entitled to be sentenced under the binding guidelines regime in effect at the time he

committed his crimes, rather than the advisory scheme created by the Supreme Court's remedial opinion in *Booker*, because the effect of that opinion was to expose him to a longer sentence in violation of ex post facto limitations inherent in due process. *See Rogers v. Tennessee*, 532 U.S. 451, 456 (2001). We rejected this argument in *United States v. Jamison*, 416 F.3d at 539, released just as briefing was completed in this case. Jordan has made no attempt to persuade us, in his citation to supplemental authority or at oral argument, that *Jamison* ought to be overruled. We decline to revisit it.

Finally, Jordan argues that because hypothetical future defendants could commit more egregious forms of the same crimes he committed, the theory of marginal deterrence undermines the reasonableness of the maximum sentence imposed on him. *See United States v. Newsom*, 402 F.3d 780, 785-86 (7th Cir. 2005). But Jordan waived this argument by raising it for the first time in his reply brief. *See, e.g.*, *United States v. Stevens*, 380 F.3d 1021, 1025 (7th Cir. 2004) (citing *United States v. Alvarez-Martinez*, 286 F.3d 470, 475 (7th Cir. 2002)).

AFFIRMED.

No. 05-1296                                                11

A true Copy:

     Teste:

                   _____
                   *Clerk of the United States Court of*
                   *Appeals for the Seventh Circuit*