In the

# United States Court of Appeals

## For the Seventh Circuit

———————

Nos. 03-3293 & 03-3294

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

RONALD J. VALLE,

*Defendant-Appellant*.

———————

Appeals from the United States District Court
for the Central District of Illinois.
Nos. 02 CR 40154 & 02 CR 40201—**Michael M. Mihm**, *Judge*.

———————

ARGUED JUNE 16, 2004—DECIDED AUGUST 15, 2006

———————

Before COFFEY, RIPPLE and WILLIAMS, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Ronald Valle was sentenced to 163 months' imprisonment for bank robbery and for violation of his supervised release. He appealed his sentence. Because Mr. Valle was sentenced prior to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), we ordered a limited remand to determine whether the district court would have imposed a different sentence had it not been bound by the then-mandatory United States Sentencing Guidelines. The district court has advised us that it would not have imposed a different sentence, and we now affirm the judgment of the district court.

**I**

**A.**

According to a written agreement with the Government, Ronald Valle pleaded guilty to one count each of aggravated bank robbery, *see* 18 U.S.C. § 2113(a), interstate transportation of a stolen motor vehicle, *see* 18 U.S.C. § 2312, and false representation of a social security number, *see* 42 U.S.C. § 408(a)(7)(B). Six other counts of bank fraud, *see* 18 U.S.C. § 1344, were dismissed as part of the agreement.

The presentence report prepared for Mr. Valle's sentencing calculated his offense level at 19 and designated his criminal history category at VI, which resulted in a guideline range of 63 to 78 months' imprisonment. However, the presentence report also suggested that an upward departure might be warranted because the guideline range did not reflect adequately the extent of Mr. Valle's criminal history. Specifically, the report noted that, in a prior prosecution for bank robbery in California, Mr. Valle had committed a total of six robberies, but several of those counts were combined for charging purposes.[1] The report recommended two methods for increasing Mr. Valle's sentencing range. First, the district court could increase Mr. Valle's offense level to reflect his prior criminal conduct. Second, the presentence report proposed that the district court could employ the career criminal

---

[1] The report also explained that, during the investigation of these robberies, Mr. Valle was brought in for questioning and Mirandized. During this questioning session, Mr. Valle admitted to robbing nineteen banks in Southern California, Arizona and Florida.

guideline. *See* U.S.S.G. § 4B1.1. According to the presentence report, if Mr. Valle had received separate sentences for his prior robberies, he would have been considered a career offender under the Guidelines. Considering Mr. Valle a career criminal would increase his offense level to 32, and after a 3-level adjustment for acceptance of responsibility, result in an offense level of 29 and a corresponding guideline range of 151 to 188 months.

Because Mr. Valle committed the crimes underlying the present conviction while on supervised release for a prior conviction, the presentence report also calculated a separate sentencing range for Mr. Valle's violation of the terms of his supervised release. Based on the grade of Mr. Valle's supervised release violation, combined with his criminal history category at the time of his original sentencing, the report recommended a sentence of 18 to 24 months' imprisonment.

At the initial sentencing hearing, the district court solicited the parties' positions on the upward departure suggested by the probation office. The attorney for the Government responded accordingly:

> As a result of extensive discussion with [Mr. Valle's counsel] . . . , I believe the parties are willing to agree to recommend to this Court a 4A1.3 departure, upward departure of five levels, which would take the defendant from a current level of 19 up to a level 24, which with a criminal history category VI results in a sentencing range of 100 to 125 months, and, Your Honor, in coupling that with the 18-24 month recommended sentence for the revocation [of Mr. Valle's supervised release] would result in a range which includes 120 months, and I believe the parties are here

> to jointly recommend to the Court a sentence of 120 months.

R.20 at 5. Mr. Valle's counsel informed the court that he was concerned about the possibility of a significant up-ward departure and, consequently, "ha[d] counseled his client to join in this recommendation for a . . . sentence to the bank robbery offense with a consecutive sentence to the revocation," totaling 120 months; defense counsel further advised the court that Mr. Valle had "agree[d] to that term of custody." *Id.* at 7.

The court, however, was concerned that a sentence of 120 months did not reflect the seriousness of Mr. Valle's con-duct. It stated:

> In looking at the defendant's record—I apologize for making this record, but I think I need to. He starts out at the age of 24 with a false report of a crime . . . . Then we have him on forgery charges in 1990 at the age of 26, deceptive practices at the age of 26. We have these California armed robberies—unarmed robberies—I'm sorry—and apparently there were just a ton of bank robberies that are really not reflected in that sentence. We also had this unarmed bank robbery in the Central District of Illinois. I think that was all part of the same deal and he got 108 months there.

> It seems to me that there's a very strong argument that this defendant really—that the Court would almost be remiss in not departing upward to a level that would reflect him as being a career offender, especially since part of what he had admitted to here is another bank robbery.

*Id.* at 7-8. The court then determined that the only way that it could accept the proposed sentence was also to

impose a longer period of supervised release by stacking the terms of supervised release for each offense. Mr. Valle initially agreed to this arrangement. However, before the district court imposed sentence, Mr. Valle's counsel invited the court's attention to case law that called into question the court's ability to stack periods of supervised release. The district court then continued the hearing to allow the parties to conduct further research on the issue.

At a continued hearing, the court determined that it could not stack periods of supervised release. It again expressed doubt that the 120-month sentence, without the additional period of supervised release, adequately reflected the seriousness of Mr. Valle's crimes and criminal history or adequately protected the public from possible criminal acts that Mr. Valle may commit in the future. The court continued the sentencing hearing again to allow Mr. Valle time to reconsider his plea agreement in light of the court's reluctance to accept the 120-month term.

After this hearing, Mr. Valle renegotiated his plea agreement with the Government. The new plea agreement acknowledged the possibility of a significant upward departure, but, unlike the first agreement, it did not contain a sentence appeal waiver.

The parties then reconvened for the final sentencing hearing. During that hearing, the Government advocated an upward departure using either method set forth in the PSR. Specifically, counsel for the Government stated that he believed "12 years is an appropriate sentence." R.22 at 15. Mr. Valle's counsel maintained that all of Mr. Valle's prior criminal conduct had been accounted for in the initial sentencing calculation. He opined that the upward departure sought by the Government really was designed to compensate for poor decisionmaking by the

Government in its prior prosecutions of Mr. Valle. Finally, Mr. Valle's counsel objected to the court's reliance on certain information contained in the PSR, specifically an in-custody statement made by Mr. Valle during which he admitted that he had committed nineteen robberies in California, Arizona and Florida. Mr. Valle's counsel stated:

> I object to the reliance upon that because there has been—we were not parties to that. I have not received discovery with respect to that. There is no 302 memorializing this. We don't know whether that's true, whether there is any factual basis to support it, whether there are specific banks referenced. Again, I don't have that information.

*Id.* at 38.[2]

After hearing arguments from the parties, the court determined that Mr. Valle's lengthy record of robberies, combined with the fact that Mr. Valle committed the instant robbery while on supervised release, took this case out of the heartland of robbery cases and justified an upward departure. Using the career criminal guideline range as a starting point, the court sentenced Mr. Valle to 139 months' imprisonment for the crimes to which he had pleaded guilty, twelve months less than the bottom range for career criminals; the court also imposed an additional twenty-four

---

[2] During the initial sentencing hearing, the district court posed the following question to Mr. Valle: "Based on your reading and review [of the presentence report], other than the issues that we've already addressed, is there anything else in the report that you feel is inaccurate or incomplete that you wish to challenge?" R.20 at 12. Mr. Valle responded: "As far as the accuracy of the PSR report, Your Honor, I tend to agree that the crimes that were committed is completely accurate . . . ." *Id.*

month sentence for violation of the terms of his supervised release. Mr. Valle appealed.

## B.

This court held the appeal in abeyance until the Supreme Court handed down its decision in *United States v. Booker*, 543 U.S. 220 (2005). Noting that "the district court's decision to increase Mr. Valle's sentence without jury fact-finding" implicated Mr. Valle's Sixth Amendment rights, we ordered a limited remand pursuant to *Paladino v. United States*, 401 F.3d 471 (7th Cir. 2005), to allow the district court to inform this court whether it would have imposed a different sentence had it understood the Guidelines to be advisory.

In accordance with the remand order, the district court requested statements from the parties concerning the propriety of the sentence. After considering these submissions, the district court advised us accordingly:

> After receiving the Remand, the court studied the presentence report and received briefs from counsel as to whether the court should ask to have the case returned here for a new sentencing. . . .
>
> The court believes that the sentence imposed at the original sentencing hearing was the correct one, and that a full Remand would serve no useful purpose.

Order, December 29, 2005, ("*Paladino* Remand Order") at 1. The court went on to explain its decision with reference to the sentencing factors set forth in 18 U.S.C. § 3553(a).

We have solicited the parties' responses to the district court's *Paladino* Remand Order and address their contentions below.

**II**

In *United States v. Rodriguez*, 425 F.3d 1041, 1046 (7th Cir. 2005), we outlined the responsibility of sentencing courts in this post-*Booker* era:

> Sentencing courts must continue to calculate the applicable guidelines range even though the guidelines are now advisory. Courts must also give defendants the opportunity to draw the judge's attention to any factor listed in 3553(a) that might warrant a sentence different from the guidelines sentence. In entering the sentence, the judge must consider the sentencing factors in § 3553(a) and articulate the factors that determined the sentence that he has decided to impose.

*Id*. (internal quotation marks and citations omitted).

This court's responsibility, in turn, is to review the district court's sentence for reasonableness in light of the factors set forth in 18 U.S.C. § 3553(a). *See Booker*, 543 U.S. 264. A sentence falling within a properly calculated guideline range enjoys a presumption of reasonableness.

> [T]he farther the judge's sentence departs from the guidelines sentence (in either direction—that of greater severity, or that of greater lenity), the more compelling the justification based on factors in section 3553(a) that the judge must offer in order to enable the court of appeals to assess the reasonableness of the sentence imposed.

*United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005). The district court, however, need not "canvass[] the statutory factors" in order for the sentence to be reasonable. *United States v. Castro-Juarez*, 425 F.3d 430, 433 (7th Cir. 2005). In short, "our function is to assess whether the district court's choice of sentence is adequately explained given

the record before us." *Id.* With these standards in mind, we turn to Mr. Valle's claims.

### A.

Mr. Valle's first argument does not focus on the reasonableness of the district court's disposition. Instead, Mr. Valle claims that we must vacate the district court's sentence because the district court's "characterization of Mr. Valle as a 'career offender,' and its labeling of him in its [*Paladino* Remand] order as 'a poster person for that label,' is legally and factually inaccurate" because "Mr. Valle does not meet the qualifications for career offender status under the guidelines." Def.'s Request to Vacate Sentence at 9.

However, the district court never stated that Mr. Valle met the requirements for sentencing under the career criminal guideline, nor did the district court impose Mr. Valle's sentence using that guideline. Instead, at sentencing, the district court took note of Mr. Valle's lengthy criminal history, his propensity to commit crimes while on probation and supervised release and the criminal activity that was not reflected in his criminal history. It then stated:

> [T]he bottom line here is that under all of these circumstances, *in my opinion* I believe this man is a career offender. I believe that the law gives me the discretion to consider him as [a] career offender, that his—that the totality of these circumstances fall completely outside the heartland for the bank robbery guidelines that we have talked about . . . .

R.22 at 38-39 (emphasis added). The court then noted that, if Mr. Valle were "sentenced as a career offender, . . . the guideline would be 151." *Id.* at 39. The court reduced that sentence by twelve months and sentenced Mr. Valle to 139

months' imprisonment for his crimes. Therefore, the district court exercised its discretion, analogized Mr. Valle's conduct to that of a career offender and used the career offender guideline range as a starting point for the sentencing determination. The district court did not make a mistake of fact as to the nature of Mr. Valle's convictions, nor did it determine as a matter of law that Mr. Valle was a career offender.

## B.

Mr. Valle also maintains that we must vacate the sentence imposed by the district court because, based on our pre-*Booker* case law, the district court "failed to establish a sufficient link between the significant degree of departure and the structure of the guidelines." Def.'s Request to Vacate Sentence at 11. Mr. Valle points to *United States v. Castro-Juarez*, 425 F.3d at 434, in support of his position that this court should employ pre-*Booker* law in evaluating upward departures.

We believe that Mr. Valle overreads our decision in *Castro-Juarez*. In that case, both parties had urged us to employ pre-*Booker* law in our review of the district court's departure. We did so, but "with the caveat that the question before us [wa]s ultimately the reasonableness of the sentence the district court imposed, not the court's application of a guideline authorizing an upward departure." *Id.* Later in the opinion, we were more explicit that our pre-*Booker* standards for evaluating departures are no longer binding:

> We reiterate, however, that we have looked to § 4A1.3 and [pre-*Booker* case law] only by way of analogy, and while [the defendant's] sentence might not have been sustainable as an "upward departure" before *Booker*,

it does not follow that a term of 48 months is necessarily unreasonable. Before *Booker*, we recognized that district courts were required to sentence within the guideline range except in unusual cases, and anything but a loose comparison to pre-*Booker* departure cases would vitiate the post-*Booker* discretion that sentencing courts enjoy. All that is necessary now to sustain a sentence above the guideline range is an adequate statement of the judge's reasons, consistent with section 3553(a), for thinking the sentence that he has selected is indeed appropriate for the particular defendant.

*Id.* at 436 (internal quotation marks and citations omitted); *see also United States v. Arnaout*, 431 F.3d 994, 1003 (7th Cir. 2005) (noting "that the concept of 'departures' has been rendered obsolete in the post-*Booker* world" and reiterating that " 'what is at stake is the reasonableness of the sentence, not the correctness of the "departures" ' " (quoting *United States v. Johnson*, 427 F.3d 423, 425 (7th Cir. 2005))). Consequently, the fact that the district court did not establish a precise link between the degree of the departure and the structure of the Guidelines, as was required pre-*Booker*, is not a basis for disturbing the district court's sentence.

## C.

Finally, Mr. Valle maintains that the district court "improperly relied upon an uncorroborated statement" in the presentence report that Mr. Valle had confessed to the commission of nineteen additional robberies. Def.'s Motion to Vacate Sentence at 11. Mr. Valle maintains that, based on our pre-*Booker* law, the district court was required to make specific findings with respect to the reliability of this evidence before it could be used to support an upward departure.

We believe that there are several flaws in this argument. First, it again assumes that we are bound by pre-*Booker* law with respect to upward departures. As we have set forth above, that is not the case. Second, Mr. Valle's characterization of the statement as "uncorroborated" is not entirely accurate. At his initial sentencing hearing, Mr. Valle was asked whether he had reviewed the PSR and whether it was inaccurate or incomplete; Mr. Valle responded that, "[a]s far as the accuracy of the PSR report, Your Honor, I tend to agree that the crimes that were committed is completely accurate . . . ." R.20 at 12. Finally, even if there were some doubt regarding the accuracy of the statement, the uncharged criminal conduct was only one factor in the district court's decision to impose the increased sentence. Among the other factors were (1) Mr. Valle's participation in multiple other bank robberies and other crimes, for which Mr. Valle was charged and had pleaded guilty, (2) Mr. Valle's propensity to commit crimes while on probation, and (3) the necessity to protect the public from Mr. Valle's future criminal activity. Under these circumstances, we do not believe that the district court's partial reliance on the statement in the PSR rendered Mr. Valle's sentence unreasonable.

## D.

Apart from the above arguments, Mr. Valle does not contend that, evaluated against the factors set forth in 18 U.S.C. § 3553(a), his sentence was unreasonable. Nor do we believe that such an argument would be tenable. In its *Paladino* Remand Order, the district court carefully considered the factors set forth in 18 U.S.C. § 3553(a). The court noted that the robbery and revocation at issue here were only the most recent in a long line of serious crimes

that Mr. Valle had undertaken during his adult life. Furthermore, the district court believed that it was "clear from the Presentence Report that the Defendant is committed to violating the law with impunity, including the commission of the present bank robbery while on supervised release for the earlier conviction in California for bank robbery." *Paladino* Remand Order at 3. Additionally, the court observed that, based on Mr. Valle's history and recidivism, he would "almost certainly continue to commit bank robberies once released from custody in this case." *Id.* at 4. Consequently, a lengthy sentence was necessary to protect the public from this criminal activity. Based on the factors set forth in § 3553(a), the sentence imposed was not an unreasonable one.

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*