In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-3684

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARK A. MCINTYRE,

*Defendant-Appellant.*

———————

Appeal from the United States District
Court for the Southern District of Illinois.
No. 3:06CR30095-002-GPM—**G. Patrick Murphy**, *Judge.*

———————

ARGUED JUNE 11, 2008—DECIDED JUNE 27, 2008

———————

Before MANION, ROVNER, and TINDER, *Circuit Judges.*

PER CURIAM.    After robbing six banks in four states over a one month period with his girlfriend, Mark A. McIntyre pleaded guilty to one count of bank robbery. *See* 18 U.S.C. § 2113(a). The district court, consulting the presentence investigation report and both parties' objections and motions, calculated a guidelines imprisonment range of 37 to 46 months. The government then argued for an above-guidelines sentence, and the court sentenced McIntyre to 144 months' imprisonment—nearly 100 months above the guidelines range. McIntyre appeals his sentence. Because the sentence is reasonable, we AFFIRM.

McIntyre, along with his girlfriend Brook Beaulieu, was indicted on July 20, 2006, with one count of bank robbery. 18 U.S.C. § 2113(a). Beaulieu pleaded guilty on May 21, 2007, was sentenced to 41 months' imprisonment, and cooperated with the government's prosecution of McIntyre.

Before pleading guilty, McIntyre asked for the probation office to prepare his presentence investigation report, which listed his total offense level at 22 and his criminal history category at II, resulting in a recommended guidelines imprisonment range of 46 to 57 months. The probation officer awarded three criminal history points for a 1989 conviction in which McIntyre broke into a rectory, tied up a priest, and stole between $50 and $90 from his wallet. However, McIntyre received no criminal history points for numerous crimes committed prior to 1989, including an armed burglary with the intent to rob a person over 65 years of age. And the officer explained that, after pleading guilty, Beaulieu admitted to authorities that she and McIntyre were involved in six other bank robberies throughout the country in the month prior to the June 20 robbery.[1] The officer also noted that McIntyre had threatened the life of Beaulieu's public defender because she refused to advise him on his case.

McIntyre objected to the presentence investigation report, stating that he deserved a reduction of three points for acceptance of responsibility, despite not yet having pleaded guilty. Two weeks later, McIntyre pleaded guilty without a plea agreement. The government then filed its own

---

[1] At the time of sentencing, McIntyre had several counts of bank robbery charges pending in Massachusetts and Connecticut stemming from this month-long spree.

objection to the report, arguing that the probation officer should have recommended increasing McIntyre's offense level for obstructing justice based on his threat toward Beaulieu's public defender and a letter he sent Beaulieu, which threatened, "Just don't cop out to anything and stop telling on me!" And, the government continued, McIntyre did not deserve acceptance points if he is found to have obstructed justice. The government also moved for an "upward departure," claiming that the presentence report under-represented the seriousness of McIntyre's criminal history. In particular, the government noted that McIntyre would have qualified as a career offender if he had not received a "forthwith" sentence on his 1989 conviction, which discharged him from a previous conviction.[2] Further, the government argued that the report failed to recognize the likelihood of recidivism.

At sentencing the government offered testimony from Ron Lott as evidence of McIntyre's threat against Beaulieu's public defender. Lott testified that, after calling and angrily confronting Beaulieu's attorney, McIntyre told him that he was going to "have some of his guys come down here and take care of her. Meaning kill her." Shortly thereafter, the district court denied the government's request for a two-level increase for obstructing justice because the letter and verbal threat were

---

[2] McIntyre received a "forthwith" sentence as part of his 1989 conviction for armed robbery while masked, which discharged him from his 1983 conviction for armed burglary. As a result, the 12-year sentence he received in 1983 was discharged just three months prior to the 15-year limit on criminal history computation, thereby allowing him to avoid qualification as a career offender.

somehow "ambiguous." And it granted McIntyre a two-level reduction in his base offense level for acceptance of responsibility. Based on a total offense level of 20 and a criminal history category of II, the district court then calculated a guidelines imprisonment range of 37 to 46 months.

The district court next addressed the government's motion for an above-guidelines sentence. The government argued that McIntyre's criminal history category of II "clearly underrepresented" his criminal history because it did not include nearly a dozen crimes he committed prior to 1991. Further, the government asserted that McIntyre was "really a career offender" based upon his lengthy criminal history and the fact that, but for a quirk in Massachusetts law, he would in fact have qualified as a career offender. McIntyre, in response, argued for a within-guidelines sentence because of the 41-month sentence that Beaulieu received. He also claimed that he spent the twelve years between 1994 and 2006 as a "productive citizen" with several jobs and no criminal history.

After hearing from both sides, the district court sentenced McIntyre to an above-guidelines sentence of 144 months' imprisonment and three years' supervised release. The court credited the government's argument that "but for a peculiarity in Massachusetts law regarding a so-called forthwith resolution of the case, the defendant would be a career offender and would be looking at a guideline sentence which is in excess of the statutory max" of 20 years. Further, the court reasoned that McIntyre had a "history of violent and abusive conduct" and agreed with the government that his criminal history was

underrepresented. The court also took into account the need to protect the public from further crimes McIntyre might commit and the threats he made against the public defender's life. McIntyre now appeals his sentence.

On appeal McIntyre first argues that the district court's 144-month sentence was unreasonable because it failed to apply the rules governing upward departures as set out in U.S.S.G. § 4A1.3. Since the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), however, we do not require a district court to follow § 4A1.3 when imposing an above-guidelines sentence. *See United States v. Valle*, 458 F.3d 652, 657-58 (7th Cir. 2006); *United States v. Castro-Juarez*, 425 F.3d 430, 434-36 (7th Cir. 2005). Indeed, we will uphold an above-guidelines sentence so long as the district court offered an adequate statement of its reasons, consistent with 18 U.S.C. § 3553(a), for impos-ing such a sentence. *Castro-Juarez*, 425 F.3d at 436; *United States v. Jordan*, 435 F.3d 693, 698 (7th Cir. 2006). The dis-trict court, though, need not "canvass[ ] the statutory factors" for an above-guidelines sentence to be reasonable. *Valle*, 458 F.3d at 656 (internal quotation marks and cita-tion omitted). Ultimately, we review the sentence for reasonableness. *See Gall v. United States*, 128 S. Ct. 586, 597 (2007).

McIntyre also contends that his sentence is unreason-able because the court did not provide sufficient reasons for its non-guidelines sentence. But after correctly cal-culating the guidelines range, the district court explicitly referred to § 3553(a) in explaining McIntyre's 144-month sentence, which was barely half of the 20-year statutory maximum McIntyre faced. The court first considered McIntyre's lengthy history of violent crime and abusive conduct, such as his armed robbery of an elderly man

in 1983 and his masked armed robbery of a priest in 1989. It then noted the psychological harm McIntyre caused by robbing banks. The judge also discussed the threats made against Beaulieu's attorney, the letter McIntyre sent to Beaulieu herself, and studies showing recidivism rates declining as men grow older. Finally, the court took into account the need to protect the public and to deter McIntyre himself from committing further crimes. All of these considerations relate to the factors laid out in 18 U.S.C. § 3553(a). *Cf. Valle*, 458 F.3d at 658-59 (upholding 163-month sentence as reasonable where guidelines range was 63 to 78 months); *Jordan*, 435 F.3d 696-98 (upholding 240-month sentence as reasonable where guidelines range was 110 to 137 months). Moreover, had it not been for a quirk in Massachusetts law, McIntyre would have been sentenced as a career offender. The court's above-guidelines sentence was therefore reasonable because it was adequately explained and consistent with the § 3553(a) factors.

Accordingly, we AFFIRM McIntyre's sentence.