**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 24, 2019
Decided February 15, 2019

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-2665

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 16-CR-30092-NJR-01 |
| GEORGE D. MADGETT, *Defendant-Appellant.* | Nancy J. Rosenstengel, *Judge.* |

**O R D E R**

George Madgett pleaded guilty to unlawfully possessing a gun as a felon. In part because he narrowly avoided a sentencing enhancement under the Armed Career Criminal Act, the district court found that the Sentencing Guidelines underrepresented his criminal history and imposed an above-guidelines sentence of 84 months' imprisonment. On appeal, Madgett asserts that the court impermissibly relied on an unreasonable inference about his offense and failed to explain how his failure to qualify for the ACCA enhancement related to the sentencing factors in 18 U.S.C. § 3553(a). Because Madgett reads too much into the court's comments about his gun possession, and the court sufficiently tied the sentence to the statutory sentencing factors, we affirm the judgment.

During a traffic stop, Madgett was caught with a loaded pistol that had been stolen from his ex-girlfriend two weeks earlier; he was charged with being a felon in possession of a firearm, 18 U.S.C. § 922(g). During plea negotiations, the parties initially disputed whether Madgett qualified for an enhanced sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e), but the government later conceded that a juvenile conviction for aggravated battery in Illinois was not a predicate felony under the categorical approach. *See Mathis v. United States*, 136 S. Ct. 2243 (2016). Madgett pleaded guilty, and the case proceeded to sentencing.

Without the ACCA enhancement, the probation officer calculated a guidelines range of 57 to 71 months' imprisonment, based on a total offense level of 23 and a criminal history category of III. One of Madgett's five criminal history points came from a conviction for stabbing someone in the head with a knife, for which he received two years' probation. Two points stemmed from an incident in which Madgett, already a felon, choked his girlfriend, held a gun to her head, and shot someone else three times; he received time-served and four years' probation. The other two criminal history points arose from the present offense. Additionally, as a sixteen-year-old, Madgett had accrued a juvenile conviction for stabbing one person and beating another with a baseball bat, but this offense had been expunged and garnered no extra points; he was sentenced to one year of supervision. And the presentence report also showed a conviction for aggravated unlawful use of a weapon for wrongfully possessing a loaded revolver, but the Illinois Supreme Court deemed this conviction unconstitutional, so it did not affect the guidelines-range calculation.

Before the hearing, both parties submitted sentencing memoranda. Madgett requested a sentence at the low end of the range, arguing that the guidelines sufficiently accounted for his criminal history, that the potential threat of the ACCA enhancement provided adequate deterrence, and that he had a solid plan to relocate and obtain legitimate work after his incarceration. The government argued for a ten-year sentence, the statutory maximum. It asked the court to consider the "real world facts" of Madgett's criminal history, including the present case, and emphasized his extensive violent behavior and unresponsiveness to criminal consequences. The government also stated, without further explanation, that the maximum sentence was necessary to avoid unwarranted sentencing disparities between Madgett and other similarly situated defendants subject to ACCA's minimum fifteen-year sentence. Madgett added in mitigation that the facts underlying this conviction were not as violent as his previous offenses.

After hearing the parties' arguments, the court first outlined its general view of the mitigating and aggravating factors. The court rejected Madgett's argument that the offense conduct in this case should be a mitigating factor, saying: "Maybe [Madgett] wasn't out shooting the gun, but driving around in a car with a loaded weapon with three people who are smoking marijuana is just begging for something violent or dangerous to happen. So that is very concerning—just of what really was going on." It also noted that the "real world facts" of Madgett's previous offenses "would trigger the Armed Career Criminal Act" and that his vacated weapons conviction, if charged differently, would have increased the guidelines range. And the court discussed the violent details of Madgett's prior offenses and his "many opportunities" to change.

After pronouncing a sentence of 84 months' imprisonment—"slightly higher" than the high end of the guidelines range (i.e., 71 months)—the court explained its rationale. It acknowledged that the ACCA did not apply, but stated that the guidelines did not reflect fully his criminal history; the court also mentioned that Madgett had "possessed a loaded firearm after being continued on probation for shooting someone three times." Considering his continued illegal possession of guns, the court said, the chosen sentence was necessary to provide deterrence and protect the public. Before concluding its explanation, the court reiterated that, because some of Madgett's past convictions were allotted no criminal history points, and he had received probation numerous times, "his criminal history is underrepresented by the guidelines." The court acknowledged as mitigating factors the absence of a father figure, a history of trouble from a young age, a present desire to relocate and work, and his fast acceptance of responsibility.

At the end of the hearing, the court asked Madgett if there was any reason why the sentence should not be imposed as stated and if he wanted any further elaboration of the § 3553(a) factors; Madgett answered "no." Madgett also told the court that he was satisfied that it had addressed his main arguments in mitigation. Madgett now appeals only the sentence's procedural reasonableness.

Madgett argues that the district court made two procedural errors. First, he contends that the court impermissibly inferred, without any supporting evidence, that he had some additional criminal purpose when he was found with the gun. Second, Madgett argues that the court's rationale was inadequate and inconsistent with the sentencing factors in 18 U.S.C. § 3553(a) because it justified the above-guidelines sentence on the notion that, without the categorical approach, he would have qualified for the ACCA enhancement. As a threshold matter, the government responds that

Madgett has waived (or at least forfeited) these issues by failing to raise them at sentencing.

Madgett, however, did not waive or forfeit either issue. A party need not state an "exception" to a ruling that the court has already made—specifically "the district court's explanation of its sentencing decision." *United States v. Pennington*, 908 F.3d 234, 238 (7th Cir. 2018). And, here, Madgett sufficiently, and unsuccessfully, argued both challenges to the court before it imposed sentence, thus preserving them for appellate review. *See United States v. Courtland*, 642 F.3d 545, 551 (7th Cir. 2011) ("[P]reserving a claim is ordinarily accomplished by raising the issue in advance of the ruling.") (citing FED. R. CRIM. P. 51(b)). For example, he said that (1) "the facts of the instant offense are nothing like the terrible facts" of his previous crimes and (2) that his criminal history and the ACCA were "something that the sentencing commission could and did take into account."

In the absence of waiver or forfeiture, we review Madgett's procedural challenges de novo. *See United States v. Lockwood*, 840 F.3d 896, 900 (7th Cir. 2016). A sentencing court procedurally errs when it relies on clearly erroneous facts or fails to explain the chosen sentence adequately. *See Gall v. United States*, 552 U.S. 38, 51 (2007).

Turning to the district court's purportedly improper inference, a fair reading of the sentencing transcript reveals no clearly erroneous fact. The court did *not* imply that Madgett had an additional criminal purpose when he was caught riding in a car with a loaded gun, smoking marijuana with others—it pointed out the dangerousness of that conduct in response to Madgett's effort to minimize it. *See* 18 U.S.C. § 3553(a)(1). The description of the conduct was accurate, and the court's statement that this activity "is just begging for something violent or dangerous to happen" is the type of common-sense observation that sentencing judges are permitted to make. *See United States v. Ramirez*, 783 F.3d 687, 689, 690–91 (7th Cir. 2015) (common-sense inferences about the foreseeability of the use of guns in a drug conspiracy were permissible). Madgett places too much importance on the reference to "what was really going on." But the district court never suggested an answer to that question. *See United States v. Mejia*, 859 F.3d 475, 478 (7th Cir. 2017) (viewed in context, court's statement that it "did not 'really know what happened'" did not constitute unreasonable speculation). And the court was not required to accept Madgett's argument that his nonviolent offense conduct was a mitigating factor that warranted a shorter sentence. *See United States v. Lucas*, 670 F.3d 784, 793 (7th Cir. 2012).

Second, Madgett argues that the court's explanation was inadequate because it relied on inappropriate considerations to justify the above-guidelines sentence; mainly, that he would have qualified for the ACCA enhancement if the categorical approach did not apply—that is, if the law were different. (Madgett committed aggravated battery with a knife as a juvenile, conduct that would be "violent" under *Curtis Johnson v. United States*, 559 U.S. 133 (2010). But a person can also violate Illinois's aggravated battery statute by conduct that is not "violent." *See Mathis*, 136 S. Ct. 2243.) Madgett contends that "[c]ompensation for the fact that a defendant had the good fortune not to qualify for a harsh statutory sentencing enhancement serves none of" the goals of sentencing and that his near-miss was not a sufficiently particularized characteristic to warrant a higher sentence.

Madgett's arguments are not persuasive. Despite his insistence to the contrary, the district judge's invocations of the ACCA were a way of emphasizing both the length and severity of Madgett's past criminal conduct. It pointed to Madgett's two past crimes—the juvenile adjudication for stabbing and beating someone and the unconstitutional conviction for aggravated unlawful use of a weapon. Reviewing Madgett's many convictions and arrests, the court commented that his past included "a lot of violent conduct" and that a longer sentence was necessary to "protect the public from further crimes of the defendant." The court expressed that, because Madgett had chosen to possess a loaded and stolen firearm, while driving around smoking marijuana, despite having just received probation for shooting someone, an above-guidelines sentence was warranted to reflect the seriousness of the offense and promote respect for the law. In this way, the court took care, as required, to tie its explanation to relevant § 3553(a) factors. *See United States v. Kappes*, 782 F.3d 828, 847 (7th Cir. 2015). The district court's explanation was "sufficiently compelling to support the degree of the variance" of 13 months above the guidelines range. *See Gall*, 552 U.S. at 50.

We rejected an argument similar to Madgett's in *United States v. McIntyre*, 531 F.3d 481 (7th Cir. 2008). There, we upheld an above-guidelines sentence where the district court accepted the government's position that McIntyre should be sentenced as if he were a career offender, based upon his lengthy criminal history "and the fact that, but for a quirk in Massachusetts law, he would in fact have qualified as a career offender." *Id.* at 483–84. The sentence was reasonable, "adequately explained[,] and consistent with the § 3553(a) factors" because the district court had reasoned that McIntyre had a violent history, that his criminal history was underrepresented, and that a long sentence was needed to protect the public. *Id.* In fact, long after *Booker* made formal "departures" for over- and under-representation of a defendant's criminal

history obsolete, sentencing courts routinely and uncontroversially consider these factors when varying from the guidelines range. *See, e.g.*, *United States v. Padilla*, 618 F.3d 643, 646 (7th Cir. 2010) (underrepresented); *United States v. Maulding*, 627 F.3d 285, 286 (7th Cir. 2010) (overrepresented). What the district court did here in referring to the ACCA is not meaningfully different.

Finally, Madgett takes issue with the government's unsupported assertions that an above-guidelines sentence was necessary to avoid unwarranted sentencing disparities with similarly situated defendants sentenced under the ACCA. But the court did not so much as acknowledge this argument, let alone rely on it, and so there was no error affecting the sentence. *See Pennington*, 908 F.3d at 240–41 (noting that a court errs by relying on inaccurate information to decide sentence).

The judgment of the district court is AFFIRMED.